John G. BROWN, Petitioner–Appellee,

v.

Daniel VASQUEZ, Warden, Daniel E. Lungren, Attorney General of the State of California, Respondents–Appellants.

No. 90–56127.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 29, 1991.

Decided Dec. 31, 1991.

As Amended Feb. 19, 1992.

Robert M. Foster, Deputy Atty. Gen., San Diego, Cal., for respondents-appellants.

William Archer and Donald Etra, Sidney & Austin, Los Angeles, Cal., for petitioner-appellee.

Kent S. Scheidegger, Criminal Justice Legal Foundation, Sacramento, Cal., for amicus curiae.

Before FLETCHER, THOMPSON and LEAVY, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

John G. Brown is a California state prisoner who has been sentenced to death. His conviction and sentence were affirmed by the California Supreme Court. *People v. Brown*, 46 Cal.3d 432, 250 Cal.Rptr. 604, 758 P.2d 1135 (1988). His petition for a writ of certiorari was denied by the United States Supreme Court. *Brown v. California*, 489 U.S. 1059, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989). His petition for a writ of habeas corpus filed with the California Supreme Court was denied. His execution was scheduled for June 8, 1990.

On June 1, 1990, Brown, proceeding pro se, filed in the United States District Court for the Central District of California a "Request for Appointment of Counsel in Death Sentence Case and For Stay of Execution of Death Sentence." In an accompanying declaration he stated that he was under imminent sentence of death, that the attorney who represented him in state court was unavailable to represent him in his federal habeas proceeding, and that he could not afford to retain an attorney. He further stated: "I intend to file a petition for writ of habeas corpus in this Court, alleging federal constitutional errors which entitle me to relief from the judgment of death. I need the assistance of counsel in preparing and litigating the petition."

Pursuant to its Local Rule 26.8.7(b),[1] the district court ordered Brown's execution stayed for forty-five days. The district court subsequently extended the stay for an additional thirty days, citing as a primary reason difficulty in finding appointed counsel to represent Brown. On July 30, 1990, counsel was appointed to represent Brown. On August 10, 1990, at appointed counsel's request and pursuant to the Central District's Local Rule 26.8.7(c),[2] the district court granted an additional stay of 120 days to afford appointed counsel time to prepare and file Brown's habeas petition.

The state respondents moved to vacate the stay of execution. They contended the district court lacked jurisdiction because Brown had not filed a petition for habeas corpus relief, and thus, they argued, there was no proceeding pending before the district court on which to predicate a stay order under 28 U.S.C. § 2251.[3]

1. Local Rule 26.8.7(b) provides, in relevant part:
   Where counsel in state court proceedings ... is ... not available or qualified to proceed, the selection panel will designate an attorney from the panel who will assist an indigent petitioner in filing *pro se* applications for appointment of counsel and for temporary stay of execution. Upon filing of this application the district court shall issue a temporary stay of execution and appoint counsel from the panel of attorneys certified for appointment. The temporary stay will remain in effect for forty-five (45) days unless extended by the court.

2. Local Rule 26.8.7(c) states that:
   Where counsel new to the case is appointed, upon counsel's application for a temporary stay of execution accompanied by a specification of nonfrivolous issues to be raised in the petition, the district court shall issue a temporary stay of execution unless no nonfrivolous issues are presented. The temporary stay will remain in effect for one hundred twenty (120) days to allow newly appointed counsel to prepare and file the petition.
   Following his appointment, Brown's attorney satisfied the requirements of this section by identifying six nonfrivolous and independent constitutional issues which he intended to raise in the habeas corpus petition. *Brown v. Vasquez,* 743 F.Supp. 729, 732 n. 10 (C.D.Cal.1990).

3. This section provides:
   A justice or judge of the United States before whom a habeas corpus proceeding is pending may, before final judgment or after

The district court denied the motion. It held that it had jurisdiction under the All Writs Act[4] to issue any orders necessary to preserve its potential jurisdiction, including a stay of execution in anticipation of the filing of a petition for a writ of habeas corpus. *Brown v. Vasquez,* 743 F.Supp. 729, 732 (C.D.Cal.1990). The state respondents appeal. We affirm, although for reasons different from those stated by the district court.

## DISCUSSION

The issue presented by this appeal is whether a district court has jurisdiction to stay the execution of a state prisoner in order to appoint counsel to assist the prisoner in preparing and filing a petition for federal habeas corpus relief. We conclude a district court has such jurisdiction. We have appellate jurisdiction under 28 U.S.C. § 1292(a)(1)[5].

final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any state for any matter involved in the habeas corpus proceeding.
   After the granting of such a stay, any such proceeding in any state court or by or under the authority of any state shall be void. If no stay is granted, any such proceeding shall be as valid as if no habeas corpus proceedings or appeal were pending.
   28 U.S.C. § 2251.

4. The All Writs Act appears at 28 U.S.C. § 1651(a). It provides that, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."
   Appellants argue that the All Writs Act is superseded for purposes of this case by 28 U.S.C. § 2283 (the Anti–Injunction Act), and therefore cannot serve as the jurisdictional basis for the district court's action. We do not address the merits of this claim because we conclude that 28 U.S.C. § 2251 provides an adequate independent basis for the district court's exercise of jurisdiction.

5. This section provides, in relevant part, that, "[t]he courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions...."

When a death penalty prisoner has a habeas corpus proceeding pending before a federal district court, that court has jurisdiction to stay the prisoner's execution. 28 U.S.C. § 2251. Appellants contend that a "habeas corpus proceeding" cannot be considered "pending" before a district court under section 2251 until something has been filed with the court that can be interpreted as a petition for a writ of habeas corpus.[6] Appellants point out that what Brown filed was not a habeas petition, but simply a request and declaration seeking appointment of counsel to help him prepare a habeas petition. We agree that what Brown filed should not be interpreted as a petition for a writ of habeas corpus.[7] But this does not end the inquiry.

The Supreme Court has recognized that "[t]he writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290–91, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969). It is, in essence, "the first line of defense against constitutional violations." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977).

Given the fundamental importance of the writ, it is essential that it be "administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris*, 394 U.S. at 291, 89 S.Ct. at 1086. The Court has "consistently rejected interpretations of the habeas corpus statute[8] that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." *Hensley v. Municipal Court*, 411 U.S. 345, 350, 93 S.Ct. 1571, 1574, 36 L.Ed.2d 294 (1973).

In *Hensley*, the Court was called upon to determine whether a state prisoner who had been released on his own recognizance was "in custody" for purposes of the federal habeas corpus statute.[9] In holding that habeas relief is not restricted to situations where the petitioner is subject to present physical confinement, the Court emphasized that "habeas corpus is not 'a static, narrow, formalistic remedy,' but one which must retain the 'ability to cut through barriers of form and procedural mazes.'" *Id.* 411 U.S. at 349–50, 93 S.Ct. at 1573–74 (quoting *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963), and *Harris*, 394 U.S. at 291, 89 S.Ct. at 1086).

The *Harris* admonition to interpret the federal habeas corpus statute with "initiative and flexibility" is especially relevant in the present case in light of the Court's recent decision in *McCleskey v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In *McCleskey*, the Court held that the doctrine of abuse of the writ[10] barred a prisoner from asserting a constitutional claim in a subsequent federal habeas corpus proceeding when he had not raised the claim in his initial federal application and

---

**6.** The procedural and substantive requirements for a petition for a writ of habeas corpus are found at 28 U.S.C. § 2242. This section is augmented by Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts.

**7.** While recognizing that the federal courts have a responsibility to construe liberally *pro se* prisoners' vaguely-framed pleadings as habeas petitions where the interests of justice demand, *see, e.g., Tyler v. United States*, 929 F.2d 451 (9th Cir.1991) (construing "Motion under 28 USC § 2255" as a petition for habeas under 28 U.S.C. § 2241); *Tucker v. Carlson*, 925 F.2d 330 (9th Cir.1990) (section 1983 and *Bivens* action construed as habeas), what Brown filed here was a request for counsel to help him prepare and file a petition, not, in itself, a petition for writ of habeas corpus.

**8.** The federal habeas corpus statute is set forth at 28 U.S.C. §§ 2241 to 2255.]

**9.** In *Hensley*, the Court was interpreting section 2241(c)(3) which limits the availability of habeas corpus relief to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States."

**10.** The doctrine of abuse of the writ "refers to a complex and evolving body of equitable principles" which determine whether a habeas corpus petitioner can bring a federal constitutional claim in a habeas action when he failed to assert the claim in a prior habeas proceeding. *McCleskey*, 111 S.Ct. at 1467.

could not show either good cause for failing initially to raise the claim and prejudice resulting from such failure, or that a fundamental miscarriage of justice would result if the claim were not entertained. *McCleskey*, 111 S.Ct. at 1470. The Court also restated its position taken in *Antone v. Dugger*, 465 U.S. 200, 205–06 & n. 4, 104 S.Ct. 962, 964–65 & n. 4, 79 L.Ed.2d 147 (1984) (per curiam), that a habeas petitioner will not be excused from failing to raise a claim in his first federal petition on the ground that his counsel had to prepare the first petition in haste and did not have time to become familiar with the case. *McCleskey*, 111 S.Ct. at 1467.

Given the teaching of *McCleskey*, a prisoner applying for habeas corpus relief in federal court must assert all possible violations of his constitutional rights in his initial application or run the risk of losing what might be a viable claim. This is a substantial burden. Compounding this burden, the petitioner is often illiterate or poorly educated and yet must decipher a complex maze of jurisprudence in order to determine which of his constitutional rights, if any, may have been violated. Such a task is "difficult even for a trained lawyer to master," and, understandably, is often beyond the abilities of most prisoners. *Murray v. Giarratano*, 492 U.S. 1, 28, 109 S.Ct. 2765, 2780, 106 L.Ed.2d 1 (1989) (Stevens, J., dissenting). It is thus not surprising that when a prisoner attempts to prepare his own habeas petition without the assistance of counsel, the product of his efforts is often a confusing and incomprehensible amalgam of claims which not only fails to protect the prisoner, but which ties up valuable court time in the inevitable struggle to comprehend what it is that is being alleged.[11]

The Supreme Court has recognized the inherent problems faced by prisoners, and by the courts, when prisoners are forced to file habeas petitions pro se. In *Johnson v. Avery*, the Court held that a state could not bar prisoners from furnishing assistance to other prisoners in filing habeas corpus petitions. It recognized, however, that even with the help of experienced prison "writ-writers," petitions filed without the assistance of an attorney are "often so unskillful as to be a burden on the courts which receive them." 393 U.S. 483, 488, 89 S.Ct. 747, 750, 21 L.Ed.2d 718 (1969). In his concurrence, Justice Douglas argued that the pre-petition assistance of an attorney would greatly benefit both the prisoner and the court system:

> A lawyer, after examining the prisoner's transcripts or conducting an independent investigation of the facts, could immediately advise him on a course of action. Lacking the money to hire a lawyer, the prisoner must spend considerable time researching the law, preparing the required legal documents, and filing them. Sometimes years pass before the prisoner discovers what a lawyer could have told him in several weeks—that his case either has or lacks merit. The prisoners who have militantly prosecuted frivolous actions have wasted time they could have devoted to preparing themselves for release from prison. The state, by shouldering these indigent prisoners with the responsibility of acting as their own counsel, has dissipated the taxpayers' money in wasted manpower and court costs.

*Id.* at 494, n. 10, 89 S.Ct. at 753, n. 10 (Douglas, J., concurring) (quoting Charles

---

11. In a report of the Committee on Habeas Corpus, a group of circuit judges addressed the problems faced by the judiciary in dealing with pro se petitions for habeas relief:

> Much of the judges' time is spent trying to decipher and interpret the chaotic papers that come to them from prison inmates. Many of the petitioners are illiterates, or persons of limited education who depend upon "jailhouse lawyers" for assistance in preparing these documents. Not only are such practitioners notoriously unreliable, but their work

product is often a mass of confused and incomprehensible mumbo-jumbo.

*Application for Writs of Habeas Corpus and Post Conviction Review of Sentences in the United States Courts*, 33 F.R.D. 364, 384 (1963). *See also*, Marshall W. Krause, *A Lawyer Looks at Writ–Writing*, 56 Calif.L.Rev. 371, 376 (1968) ("the number of frivolous petitions filed would be greatly reduced if prisoners could have an objective evaluation of their chance before filing their petitions").

Larsen, *A Prisoner Looks at Writ–Writing,* 56 Calif.L.Rev. 343, 345–346 (1968)).

■ Notwithstanding the foregoing, as the Court in *McCleskey* reasserted, there is no constitutional right to counsel in federal habeas corpus proceedings, *McCleskey,* 111 S.Ct. at 1471, citing *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987), even if the habeas petitioner may be facing a sentence of death. *Murray,* 492 U.S. at 10, 109 S.Ct. at 2770–71. In his concurrence in *Murray,* however, Justice Kennedy recognized that "[t]he complexity of our jurisprudence in this area ... makes it unlikely that capital defendants will be able to file successful petitions for collateral relief without the assistance of persons learned in the law." *Id.* at 14, 109 S.Ct. at 2772–73 (Kennedy, J., concurring).

Justice Stevens dissented in *Murray.* In arguing that a constitutional right to counsel should exist in the initial stages of a habeas corpus proceeding, he emphasized the many obstacles faced by an incarcerated habeas petitioner, as well as the tremendous drain that pro se habeas petitions place upon the judicial system:

> The State already appoints counsel to death row inmates who succeed in filing postconviction petitions asserting at least one nonfrivolous claim; therefore, the additional cost of providing ... death row inmates competent counsel to prepare such petitions should be minimal. [citation omitted]. Furthermore, multiple filings delay the conclusion of capital litigation and exacerbate the already serious burdens these cases impose on the State's judicial system and the legal department. It seems obvious that professional preparation of the first postconviction petition, by reducing successive petitions would result in a net benefit [to the court system].

*Murray,* 492 U.S. at 29–30, 109 S.Ct. at 2781 (Stevens, J., dissenting).[12]

The Central District of California's Local Rules 26.8.7(b) and (c) address the foregoing concerns. These rules authorize the appointment of counsel to assist a death penalty prisoner in preparing and filing a habeas petition, and provide for issuance of a stay of execution pending this process.

The appellants do not challenge the validity of these rules. Rather, they argue that a prisoner who seeks the appointment of counsel and a stay of execution under the rules must allege some federal constitutional violation to provide the district court with a necessary habeas "proceeding" to give it a jurisdictional base to support a stay of execution. The appellants assert it is a minor burden at most to require a prisoner to allege some constitutional violation. They argue all the prisoner need do is file something that can be interpreted as a habeas corpus petition, no matter how inartfully it may be drawn. Thereupon, according to the thrust of the appellants' argument, a long-suffering district court through the process of reviewing the petition and allowing amendments will assist the prisoner in eventually coming up with a reasonably adequate habeas petition.

We reject this argument. The Central District rules do not require the filing of a habeas petition as a prerequisite to the issuance of a stay order. Neither does the federal habeas corpus statute. *See* 28 U.S.C. § 2251. Although there is no constitutional right to the appointment of counsel in a death penalty habeas proceeding, this does not preclude a district court from appointing counsel in such a case. *See* 18 U.S.C. § 3006A(a)(2)(B) (United States district court may provide counsel to persons seeking habeas relief where "the interests of justice so require"); *cf. Murray,* 492 U.S. at 10, n. 5, 109 S.Ct. at 2770–71 n. 5 (State of Virginia not constitutionally required to appoint counsel for a death penalty habeas petitioner, but its courts have

---

**12.** Justices Brennan, Marshall and Blackmun joined the dissent. When combined with Justices Kennedy and O'Connor, who joined in the concurrence, a total of six members of the Court took express notice of the plight confronting inmates attempting to challenge their conviction by habeas corpus without the assistance of counsel.

statutory authority to do so). If a district court can appoint counsel to represent a death penalty habeas petitioner, surely it can issue a stay of execution when necessary to make the appointment and to allow appointed counsel reasonable time to do his job. Otherwise, the prisoner could be executed before appointed counsel could be found or before that counsel could undertake the task for which he was appointed. The habeas process need not tolerate the possibility of such a perverse absurdity.

■ We conclude that the underlying purpose of the writ of habeas corpus requires us to view the application for the appointment of counsel to assist in the preparation of a death penalty prisoner's habeas corpus petition as an integral part of the habeas corpus process under section 2251. Viewed in this manner, a habeas corpus proceeding is pending before a federal district court when such an application is filed.

The appellants cite to Rule 3 of the Federal Rules of Civil Procedure which provides that "[a] civil action is commenced by filing a complaint in the court." They argue by analogy that a habeas corpus proceeding under section 2251 cannot "commence" until something which can be interpreted as a petition for habeas corpus relief is filed. We disagree.

While it is true that a habeas corpus proceeding is civil in nature, *see, e.g., Kurtz v. Moffitt*, 115 U.S. 487, 494, 6 S.Ct. 148, 149, 29 L.Ed. 458 (1885), it is equally true that such a proceeding is dramatically different from any other type of civil action. As the Supreme Court has stated, habeas corpus proceedings are of " 'fundamental importance ... in our constitutional scheme' because they directly protect our most valued rights." *Bounds*, 430 U.S. at 827, 97 S.Ct. at 1497 (quoting *Johnson*, 393 U.S. at 485, 89 S.Ct. at 749). As a result, courts are not bound to systematically ap-

ply traditional rules governing civil proceedings when to do so would be inconsistent with the overriding purpose of the federal habeas corpus statute.[13]

■ Appellants' assertion that the Anti–Injunction Act prevents the district court from ordering a stay of Brown's execution is also without merit. The Anti–Injunction Act provides that, "[a] court of the United States may not grant an injunction to stay any proceeding in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The federal habeas corpus statute, however, clearly constitutes an "expressly authorized" exception to the Act. *Mitchum v. Foster*, 407 U.S. 225, 234–35, 92 S.Ct. 2151, 2157–58, 32 L.Ed.2d 705 (1972). As a result, the Anti–Injunction Act does not prevent a district court from staying a state court proceeding pursuant to 28 U.S.C. § 2251.

## CONCLUSION

We hold that the application for the appointment of counsel to assist a death penalty prisoner in preparing a petition for federal habeas corpus relief, and for a stay of execution, filed pursuant to the Central District of California Local Rules 26.8.7(b) and (c), constitutes part of a "habeas corpus proceeding" as set forth in 28 U.S.C. § 2251. As such, the district court had jurisdiction to stay Brown's execution pending the appointment of counsel and the filing of a habeas petition.

AFFIRMED.

---

**13.** Rule 11 of the Rules Governing Section 2254 Cases in United States District Courts, enacted by Congress in 1977, recognizes that the Civil Rules do not necessarily control habeas corpus proceedings. Rather, the Civil Rules, "to the extent that they are not inconsistent with [the Habeas Corpus Rules], may be applied, when appropriate, to [habeas corpus] petitions...."

The Advisory Committee Notes following Rule 11 further clarify that, "The court does not have to rigidly apply rules which would be inconsistent or inequitable in the overall framework of habeas corpus. Rule 11 merely recognizes and affirms their discretionary power to use their judgment in promoting the ends of justice." *See also Harris*, 394 U.S. at 299, 89 S.Ct. at 1090.