127 F.3d 782
 97 Cal. Daily Op. Serv. 7449, 97 Daily Journal
D.A.R. 12,017
Arthur CALDERON, Warden, Warden of California State Prison
at San Quentin, Petitioner,
v.
UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA, Respondent,
Horace Edwards Kelly, Real Party in Interest.
 No. 97-70785.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 5, 1997.
Decided Sept. 18, 1997.
 
 Keith I. Motley, Deputy Attorney General, San Diego, CA, for petitioner and respondent.
 Eugene R. Grace, Grace, Genson, Cosgrove & Schirm, Los Angeles, CA, and Richard C. Neuhoff, San Francisco, CA, for Real Party in Interest.
 Petition for a Writ of Mandamus to the United States District Court for the Central District of California. D.C. Nos. CV-92-05420-TJH, CV-93-02951-TJH.
 Before: HALL, FERNANDEZ, and TASHIMA, Circuit Judges.
 FERNANDEZ, Circuit Judge:
 
 
 1
 The State of California, through the Warden of the California State Prison at San Quentin, moved to dismiss the proceedings in the United States District Court, which were filed on behalf of Horace Edwards Kelly. The State claimed that the Antiterrorism and Effective Death Penalty Act's one-year statute of limitations for filing applications for a writ of habeas corpus precluded the continuance of the proceedings. See 28 U.S.C. § 2244(d)(1). The district court declared that the filing deadlines of the AEDPA did not apply to this matter and denied the motion. This petition for a writ of mandamus followed. We agree with the State and order the writ to issue.
 
 BACKGROUND
 
 2
 Way over ten years ago, Kelly murdered three people in three separate incidents. On November 16, 1984, he slew Sonia Reed in San Bernardino County, California, and he followed up that deed by slaying Ursula Houser on November 17, 1984, in the same county. He then shifted his facinorous operations, and on November 22, 1984, he took the life of an eleven-year-old boy, Danny O., in Riverside County, California. He was convicted and sentenced to death for Danny O.'s murder, and on November 26, 1990, the conviction and sentence was upheld by the California Supreme Court. See People v. Kelly, 51 Cal.3d 931, 800 P.2d 516, 275 Cal.Rptr. 160 (1990), cert. denied, 502 U.S. 842, 112 S.Ct. 134, 116 L.Ed.2d 101 (1991) (Kelly I ). He was also convicted and sentenced to death for the murders of Sonia Reed and Ursula Houser, and on January 16, 1992, that conviction and sentence was upheld by the California Supreme Court. See People v. Kelly, 1 Cal.4th 495, 822 P.2d 385, 3 Cal.Rptr.2d 677, cert. denied, 506 U.S. 881, 113 S.Ct. 232, 121 L.Ed.2d 168 (1992) (Kelly II ). He did not seek further relief in the state court system, and that is where his federal court saga begins.
 
 
 3
 A didactic saga it is. Kelly has never filed an application or petition for habeas corpus relief in the federal courts and has never, therefore, stated any colorable grounds for the issuance of the Great Writ. Rather, he has been permitted to take advantage of a judicially created rule which enables an allegedly prospective federal habeas corpus petitioner to start a "proceeding" for the purpose of obtaining federally appointed counsel before any application or petition for habeas corpus is filed. That proceeding then allows the district court to "enter a stay of execution" on the theory that a petitioner has the right to counsel, and "the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims." McFarland v. Scott, 512 U.S. 849, 858, 114 S.Ct. 2568, 2573, 129 L.Ed.2d 666 (1994); see also Brown v. Vasquez, 952 F.2d 1164, 1168-69 (9th Cir.1992).
 
 
 4
 It should be observed that, in McFarland, four justices expressed disquiet at the fact that state proceedings could be interfered with and stayed before a defendant was even required to present a colorable claim to the federal courts. See McFarland, 512 U.S. at 860-61, 114 S.Ct. at 2574-75 (O'Connor, J., concurring and dissenting); id. at 873, 114 S.Ct. at 2581 (Thomas, J., joined by Rehnquist, C.J. and Scalia, J., dissenting). That is precisely what has happened here, but this case adds still another dimension to the problem, interminable delay.
 
 
 5
 On September 8, 1992, the district court granted a stay of Kelly's execution for the murder of Danny O., so that counsel could be appointed for him. Counsel was appointed January 15, 1993. Then, on June 4, 1993, the district court granted a stay of Kelly's execution for the murders of Sonia Reed and Ursula Houser and appointed counsel. Now, more than four years after the grants of those stays, there still has been no filing of a habeas corpus application, and there would be no end in sight unless the AEDPA has brought the proceedings to a close. There have, however, been other orders issued. On January 9, 1995, the district court appointed a psychiatrist to evaluate Kelly's present mental condition. Of course, Kelly's mental condition has been an issue since the beginning of the state proceedings against him. See, e.g., Kelly II, 1 Cal.4th at 514, 541, 543, 822 P.2d at 392, 411, 412, 3 Cal.Rptr.2d at 684-85, 703, 704; Kelly I, 51 Cal.3d at 944, 800 P.2d at 523, 275 Cal.Rptr. at 167. Then on January 5, 1996, the district court appointed a "next friend" to bring a habeas corpus petition on Kelly's behalf. That is another method for assuring that a defendant obtains prompt review of federal constitutional questions on habeas corpus. See Whitmore v. Arkansas, 495 U.S. 149, 161-64, 110 S.Ct. 1717, 1726-28, 109 L.Ed.2d 135 (1990). Still, no habeas corpus application or petition was filed.
 
 
 6
 The AEDPA was enacted April 24, 1996, and it, as relevant here, provided that an application for a writ of habeas corpus must be filed within one year of "the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). It is clear that we are now far beyond that one-year period, but we have held that, in justice, the one year would not begin to run until the date the AEDPA was enacted. See Calderon v. United States Dist. Court (Beeler), 112 F.3d 386, 389 (9th Cir.1997). That year has passed. Still, no application for habeas corpus has been filed.
 
 
 7
 Faced with the delay, and with no end in sight, the State filed a motion to dismiss both proceedings and to vacate the stays of execution because the one-year statute of limitations had passed. The district court, without revealing its reasoning, declared that the AEDPA's filing deadlines do not apply to this matter. This petition for a writ of mandamus followed.
 
 DISCUSSION
 
 8
 When we are asked to issue a writ of mandamus in a habeas corpus action, we apply the guidelines articulated and discussed in Bauman v. United States Dist. Court, 557 F.2d 650, 654-55 (9th Cir.1977). Those are:
 
 
 9
 (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief he desires;
 
 
 10
 (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal;
 
 
 11
 (3) whether the district court's order is clearly erroneous as a matter of law;
 
 
 12
 (4) whether the district court's order is an oft repeated error or manifests persistent disregard for the federal rules; and
 
 
 13
 (5) whether the district court's order raises new and important problems or issues of law of first impression.
 
 
 14
 Beeler, 112 F.3d at 388 (citations omitted). Of course, we have recognized that these are guidelines, that they "do not always result in bright-line distinctions," and that a decision "will often require a balancing of conflicting indicators." Bauman, 557 F.2d at 655. Nevertheless, as we have said, "[a]lthough all five factors need not be satisfied, 'it is clear that the third factor, the existence of clear error as a matter of law, is dispositive.' " Calderon v. United States Dist. Court (Nicolaus), 98 F.3d 1102, 1105 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1830, 137 L.Ed.2d 1036 (1997) (citation omitted); see also Calderon v. United States Dist. Court (Hayes), 103 F.3d 72, 74 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997).
 
 
 15
 Here at least most of the guidelines point toward the propriety of issuing the writ. The first because it is plain that if the writ is not issued, the State will be forced to await the outcome of proceedings which should not go forward at all, and which may well extend the four to five years' delay much further. Indeed, they probably will do so, considering the fact that the only excuse for not having filed an application or petition for a writ of habeas corpus is said to be Kelly's mental state, an issue which has been around for over ten years.
 
 
 16
 The second is satisfied because the very harm the State will suffer is an even longer interference in its proceedings without the benefit of a habeas corpus application to explicate any alleged federal claims.
 
 
 17
 The fourth guideline does not clearly point in favor of issuing the writ because we are not in a position to say that the error in question is oft repeated. However, that segues into the fifth guideline because the issue of the proper application of the AEDPA is exceedingly important and is one of first impression. It must be answered promptly lest errors and disruptions of state proceedings proliferate. Also, other petitioners may be misled as to their rights. See Beeler, 112 F.3d at 388.
 
 
 18
 On balance, the third guideline will, indeed, be dispositive. Thus, we turn to the merits of the State's position regarding the AEDPA.
 
 A. Statute of Limitations
 
 19
 The State's position is simple and direct. It points to the statute, which clearly requires that the "application for a writ of habeas corpus" must be filed during the one-year statute of limitations period. 28 U.S.C. § 2244(d)(1)(A). The statute does not say that a request for counsel must be filed during that time; it requires the filing of the application itself. It is abundantly clear that no application for habeas corpus has ever been filed in these matters. No doubt some sort of proceedings, which might ultimately have led to applications, were on file. But a mere possibility that a habeas corpus application will be filed is far from being the habeas corpus application itself.
 
 
 20
 We made that clear when we declared that even after counsel had been appointed and a stay had been entered, the defendant had no right to obtain discovery. That was not available before the habeas corpus application (or petition) was itself filed. See Nicolaus, 98 F.3d at 1108. In Nicolaus, we outlined many of the separate concerns that make pre-application proceedings different from the habeas corpus case itself. Among other things, there is not even an inkling that there is any valid ground for filing a habeas corpus application before one is filed. Id. at 1106. In the context of this proceeding, for example, matters have dragged on with no articulated basis for having the federal court involved.
 
 
 21
 But, says Kelly, despite the clear language of § 2244(d)(1), the AEDPA does not apply at all because it only applies to cases filed after April 24, 1996, and his case was filed before that date. We disagree. As we have said, the AEDPA applies to defendants who "did not have a federal habeas petition pending at the time AEDPA was signed into law." Beeler, 112 F.3d at 390 n. 3.
 
 
 22
 Kelly does get some succor from statements in cases which did not focus on the distinction between situations where an application or petition was pending and those where one was not. Thus, when we determined the retroactivity of the AEDPA we did repeatedly refer to the issue as involving one of "pending cases." Jeffries v. Wood, 114 F.3d 1484, 1493-98 (9th Cir.1997) (en banc) (emphasis added). In stating our conclusion, we declared that the Act, as relevant here, did not apply to "cases filed in the federal courts of this Circuit prior to the Act's effective date." Id. at 1499. Kelly, of course, now argues that his case was so filed. But he ignores our illumination of what we meant, which appears in the very next sentence: "Because Jeffries' habeas petition was filed prior to April 24, 1996, the Act does not apply to his case." Id. (emphasis added). Just so, but Kelly has never filed a petition or application.
 
 
 23
 Kelly also points to the Supreme Court's decision in Lindh v. Murphy, --- U.S. ----, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), but that case offers him precious little help. That is because the Court framed the issue before it as "whether that new section of the statute [2254(d) ] dealing with petitions for habeas corpus governs applications in non-capital cases that were already pending when the Act was passed." Id. at ----, 117 S.Ct. at 2061 (emphasis added). Lindh had filed his application for the writ long before the effective date of the Act. Thus, the provisions did not apply to him. Again, while the court repeatedly referred to "cases," the context of that reference was matters where a habeas corpus application was on file.
 
 
 24
 Were there any doubt about this reading, it is dispelled by Congress's obvious intent to " 'halt the unacceptable delay which has developed in the federal habeas process.' " Beeler, 112 F.3d at 391. Whether one believes that the delay is unacceptable, or not, the rule argued for by Kelly would seriously undercut Congress's purpose, as this matter itself illustrates. Over four years after he first obtained stays from the district court, Kelly has yet to present any application for habeas corpus to that court. If a mere appointment of counsel in what amounts to a proceeding ancillary to a true habeas corpus application can avoid the one-year statute of limitations, the Act will not have been very effective at all.B. Tolling
 
 
 25
 Kelly argues that even if the AEDPA does apply, he is entitled to tolling of the one-year provision. We have held that equitable tolling will be available when " 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." Beeler, 112 F.3d at 391; see also Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir.1996); Scholar v. Pacific Bell, 963 F.2d 264, 267-68 (9th Cir.), cert. denied, 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992).
 
 
 26
 Kelly asserts that he is not mentally competent and cannot, therefore, aid his attorney. Thus, he argues, he not only is entitled to tolling but also is entitled to have the stays imposed by the district court continued indefinitely. He cites no authority for that interesting assertion, and on the facts of these proceedings we reject it as a matter of law. When Kelly was before the California Supreme Court, he made the same argument in an attempt to forestall the whole state appellate process. That court responded:
 
 
 27
 Defendant contends that his right to "meaningful appellate review" and right to the effective assistance of counsel under the state and federal Constitutions preclude proceeding with the appeal if he is incompetent. We disagree. The United States Supreme Court has not specifically decided this question, but has done so by implication. In Whitmore v. Arkansas (1990), 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 ..., the high court held that a person has standing to bring a "next friend" challenge to a judgment of death only in limited circumstances. A "next friend" must show "that the real party in interest is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability." (Id. at p. 165 [110 S.Ct. at p. 1728] ..., italics added.) The emphasized language implies that mental incompetence, although a basis for allowing "next friend" standing to challenge the judgment, does not require cessation of postjudgment proceedings. Here, of course, "next friend" status is unnecessary, since defendant is fully represented by counsel who can protect his interests.
 
 
 28
 ....
 
 
 29
 The considerations that prohibit an incompetent person from being tried ..., do not apply after the judgment. The issues on appeal are limited to the appellate record. An appeal involves only legal issues based on that record. Attorneys do not need to rely on the defendant himself to decide what issues are worthy of pursuit.
 
 
 30
 Kelly II, 1 Cal.4th at 545-46, 822 P.2d at 413-14, 3 Cal.Rptr.2d at 705-06 (citations omitted). We fully agree. Here, too, Kelly has had counsel to represent him for a long time, and even has a next friend. The Supreme Court could hardly have contemplated that all post-conviction proceedings would be stayed because a defendant was not competent, when it endorsed the concept which allows " 'next friends' [to] appear in court on behalf of detained prisoners who are unable, usually because of mental incompetence or inaccessibility, to seek relief themselves." Whitmore v. Arkansas, 495 U.S. at 162, 110 S.Ct. at 1726. Nor is Rees v. Peyton, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), on which Kelly relies, to the contrary. The Court merely retained jurisdiction over an already filed petition until it could be determined whether the petitioner was competent to withdraw the petition. Id. at 314, 86 S.Ct. at 1506-07. The Court did not suggest that any ensuing determination of incompetence would stay action on the merits of that petition.
 
 
 31
 While we do not foreclose the possibility that some particular difficulties could require tolling in some instances, this is not one of them. This matter stands in essentially the same posture that it stood in when it was before the California Supreme Court. Because once his direct appeals were decided Kelly did not request any further relief from the California courts, he cannot, generally speaking, pursue any issues in the federal courts which were not before the California Supreme Court when it decided those appeals. Any other purported claims would be unexhausted. See Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995); Picard v. Connor, 404 U.S. 270, 277-78, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)[1]. Kelly is simply attempting to obtain from the federal courts, by indirection, the very relief he was denied on direct appeal in California. He seeks to put off any decision whatever on the merits of his claims, if any. That he cannot do under the guise of tolling or otherwise.[2] As it is, he has injected a long, fruitless delay into the state proceedings. The AEDPA has, however, brought that delay to an end.
 
 
 32
 Of course, if Kelly's real point is that a presently incompetent person should not be executed, that claim is premature. It can only be brought up if and when an order for his execution issues. In that event, California does recognize that it cannot execute an insane person. See Kelly II, 1 Cal.4th at 544, 822 P.2d at 413, 3 Cal.Rptr.2d at 705. It provides a procedure for turning the order of execution aside. See Cal.Penal Code §§ 3700-3706. Moreover, Kelly could seek relief in the federal courts. See Martinez-Villareal v. Stewart, 118 F.3d 628, 633-34 (9th Cir.1997).
 
 CONCLUSION
 
 33
 Kelly desires to turn the procedure for obtaining counsel before an application for habeas corpus is filed into a source of sempiternal delay of all state and federal proceedings against him. Before the AEDPA, that strategy had prospects for success. In fact, he has obtained a delay of all proceedings regarding his convictions for well over four years. However, although represented by counsel and a next friend, he did not file his application for habeas corpus within one year after the passage of the AEDPA. It is now too late.
 
 
 34
 Therefore, we order the issuance of a writ of mandamus which directs the lifting of the stays of execution in United States District Court, Central District of California, Cases No. CV-92-05420-TJH and No. CV-93-02951-TJH, and which further directs the dismissal of those matters forthwith.
 
 
 35
 The petition for a writ of mandamus is GRANTED.
 
 TASHIMA, Circuit Judge, dissenting in part:
 
 36
 I agree with the majority that because real party in interest Kelly had not filed a habeas corpus petition by April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Chapter 153 of the AEDPA, including the newly-enacted statute of limitations for habeas petitions, 28 U.S.C. § 2254(d)(1), applies to him. See Lindh v. Murphy, --- U.S. ----, ----, ----, 117 S.Ct. 2059, 2061, 2069, 138 L.Ed.2d 481 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir.1997) (en banc). However, I cannot agree that this case does not present the "extraordinary circumstances" entitling Kelly to the tolling of the AEDPA's statute of limitations. I therefore respectfully dissent from Part B of the majority opinion and from the judgment.
 
 
 37
 In my view, this case is squarely controlled by Calderon v. United States Dist. Court, 112 F.3d 386 (9th Cir.1997) (Beeler ). In Beeler, we first held that § 2254(d)(1) was a statute of limitations and not a jurisdictional provision; thus, that it was subject to equitable tolling. Id. at 390-91. We then described the few cases which would be eligible for equitable tolling: "Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond the prisoner's control make it impossible to file a petition on time." Id. at 391 (quoting Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir.1997)). Finally, we held that the withdrawal of an attorney, who was aiding a putative habeas petitioner to prepare his petition, whose work product was "not usable" by replacement counsel, qualified as "extraordinary circumstances" which justified tolling the statute of limitations. Id. at 391-92.
 
 
 38
 Here, unfortunately, the district court's order is not as clear as it could have been. Its operative provision, without any explanation or analysis, states tersely: "It is further Ordered that the filing deadlines of the Antiterrorism and Effective Death Penalty Act of 1996 do not apply to this case." However, "[w]e may affirm on any ground supported by the record even if it differs from the rationale of the district court." Martinez-Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996).
 
 
 39
 The record supports that Kelly has been having serious mental problems for many, many years. The State does not contend otherwise.[1] In recognition of this fact, the district court has set a hearing to determine Kelly's mental competency. Thus, a fair reading of the district court's order, fully supported by the record, is that it has ordered the AEDPA's statute of limitations to be tolled pending a determination of Kelly's mental competency. What the district court will then decide to do, will obviously depend on the outcome of that hearing.
 
 
 40
 Beeler held that the additional time required by new counsel (although there is no constitutional right to counsel in a habeas proceeding) to prepare a habeas petition was an "extraordinary circumstance" which tolled the statute. It defies logic and is contrary to the holding of Beeler to hold, as the majority does, that proceedings to determine a putative habeas petitioner's own incompetency (a petitioner who has no right to counsel) is not an "extraordinary circumstance."
 
 
 41
 The majority reaches its Draconian result-precluding Kelly from ever filing a first federal petition-by misreading the record, misapplying the law and defying our own binding precedent.
 
 
 42
 It is true, as the majority emphasizes, that these proceedings have been pending for several years.[2] However, it is evident from the record that most of the delay has been caused by the district court's attempts to grapple with Kelly's mental problems. Moreover, what the majority overlooks is that, on January 9, 1995, as part of its order that Kelly be mentally evaluated and that a mental evaluation report be filed, the district court ordered "that all other aspects of this case be, and hereby are, Stayed pending a final determination by this Court of the Petitioner's mental capacity to proceed." That stay has never been lifted and Kelly's mental capacity has never been determined.[3] Thus, for Kelly's counsel to proceed with the filing of a petition at any time after January 9, 1995, as the majority intimates they should have, would have been in direct violation of the stay.[4] Few things put the doing of an act so "clearly beyond the prisoner's control," as Beeler requires, as a court order prohibiting the doing of that act.
 
 
 43
 Even the State has recognized that a determination of Kelly's competency is a necessary prerequisite to proceeding further:Accordingly, given the fact that the Report [of the evaluating psychiatrist] has raised an issue as to Kelly's incompetence, and because if Kelly is incompetent, his counsel cannot proceed unless a next friend representing Kelly's interests is appointed, this Court should conduct a hearing to determine whether Kelly is in fact incompetent.
 
 
 44
 Respondent's Position Regarding Dr. Kessler's Report at 16, filed Jun. 26, 1995.
 
 
 45
 At least by January 9, 1995, when it appointed Dr. David Kessler to evaluate and determine Kelly's mental competency, the district court appreciated that Kelly posed a potential problem in terms of his competency to proceed with the preparation and filing of his federal habeas petition. Dr. Kessler's report was filed with the court within two-and-a-half months, by late March. Thereafter, for reasons not fully explained on the record, the district court did not set a competency hearing until one was requested by Kelly on March 20, 1997. The court granted Kelly's motion, but instead of setting the hearing before the April 24 expiration of the ADEPA's one-year period of limitation, it set the hearing for October 10, 1997, six months later.
 
 
 46
 In the meantime, apparently in response to the State's position regarding Dr. Kessler's report, the court appointed Kelly's mother as his next friend. However, the circumstances of the appointment make it plain that the purpose of the appointment was to assist Kelly with the competency hearing and nothing more.[5] This is necessarily so because a prerequisite to the appointment of a next friend for the purpose of filing a habeas petition is a finding that the putative petitioner is incompetent to verify and file the petition himself or herself. "In Whitmore v. Arkansas, 495 U.S., at 165, 110 S.Ct., at 1725, we held that 'one necessary condition for "next friend" standing in federal court is a showing by the proposed "next friend" that the real party in interest is unable to litigate his own cause due to mental incapacity.' " Demosthenes v. Baal, 495 U.S. 731, 734, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990).
 
 
 47
 Because, under Whitmore, "next friend" standing is an Article III jurisdictional requirement, 495 U.S. at 162-64, 110 S.Ct. at 1726-28, where, as here, that showing has not been made, a "next friend" cannot be appointed to prosecute a habeas proceeding. Id. Thus, the record does not support the majority's conclusion that a "next friend" was qualified and available to file a habeas petition on Kelly's behalf, since no determination has yet been made that Kelly "is unable to litigate his own cause due to mental incapacity."
 
 
 48
 Finally, the majority's reliance on the California Supreme Court's analysis of why incompetency does not prevent a direct appeal from going forward is puzzling. See People v. Kelly, 1 Cal.4th 495, 546, 3 Cal.Rptr.2d 677, 706, 822 P.2d 385, cert. denied, 506 U.S. 881, 113 S.Ct. 232, 121 L.Ed.2d 168 (1992) ("The considerations that prohibit an incompetent person from being tried ... do not apply after the judgment. The issues on appeal are limited to the appellate record. An appeal involves only legal issues based on that record. Attorneys do not need to rely on the defendant himself to decide what issues are worthy of pursuit.").
 
 
 49
 Whatever the validity of that reasoning on direct appeal, it has no place in a habeas proceeding. We have said, time and again, that because issues on direct appeal are confined to the record, many potential issues, including, for example, ineffective assistance of counsel claims, cannot be raised on direct appeal, but must be raised by collateral review. E.g., United States v. Houtchens, 926 F.2d 824, 828 (9th Cir.1991). The reason for this insistence is because "habeas proceedings permit the defendant to develop a record of 'what counsel did, why it was done, and what if any, prejudice resulted.' " United States v. Daly, 974 F.2d 1215, 1218 (9th Cir.1992) (citations omitted).
 
 
 50
 Here, in fact, Kelly did make a claim of ineffective assistance on direct appeal. See Kelly, 1 Cal.4th at 519-23, 3 Cal.Rptr.2d at 688-90, 822 P.2d 385. Thus, to suggest, by analogy to direct appeal, that a putative habeas petitioner's personal participation is unnecessary to the preparation and prosecution of a habeas petition is simply mistaken. It renders superfluous and meaningless the requirement in the rules, see footnote 4, supra, that the petitioner personally verify the petition.
 
 
 51
 In sum, the circumstances here which temporarily rendered Kelly unable to file a habeas petition are at least as extraordinary as in Beeler. Kelly may be incompetent to proceed without the assistance of a "next friend." However, whether or not he is, thus qualifying him for such assistance, has not yet been determined by the district court. It is inequitable and unjust to impute to Kelly, as the majority does, the district court's delay in acting on this issue, especially when the court has stayed all proceedings, except the competency determination. That stay has been in existence during the entire period since the AEDPA has become effective.
 
 
 52
 As indicated above, the district court has already set a hearing to determine Kelly's competency for October 10. I would hold that § 2254(d)(1)'s one-year period of limitations is tolled, due to extraordinary circumstances, until a reasonable period after the district court makes a prompt determination of whether or not Kelly is competent. If he is competent, he should be given a short, but reasonable period to file his petition. If he is incompetent, a "next friend" to file the petition on his behalf, based on his incompetency, should be appointed and that "next friend," likewise, should be given a short, but reasonable period within which to file a petition on Kelly's behalf.
 
 
 53
 That Kelly's possible incompetency requires the statute of limitations temporarily to be tolled, is not an undue interference with the State's interest. After all, that interest must be balanced, at least minimally, against a state prisoner's constitutional right to petition for the Great Writ. In these circumstances, I submit that the State's interest in insisting that the proceeding go forward immediately is not entitled to great weight. The State has no interest in executing an insane person. Ford v. Wainwright, 477 U.S. 399, 410, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986) ("The Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane.").[6] Thus, tolling the statute of limitations while Kelly's competency is being determined interferes only minimally with the interest of the State. Consequently, the State's interest in executing the sentence of death is an insufficient reason, contrary to the majority's intimation, not to toll the statute of limitations for a reasonable period of time.
 
 
 54
 The majority errs in focusing its wrath on Kelly's "desires," rather than its analysis on the proper scope to be accorded to the district court's order in light of the record: "Kelly desires to turn the procedure for obtaining counsel before an application for habeas corpus is filed into a source of sempiternal delay of all state and federal proceedings against him." As I have emphasized throughout this dissent, an appropriate tolling period would be far from "sempiternal," but only temporary, until Kelly's competency to proceed has been determined. Thus, the majority posits a false choice: Either Kelly cannot ever be required to file a habeas petition because the statute of limitations will be tolled forever, or the statute cannot be tolled at all and he must be prevented from filing a first federal petition and subjected immediately to an order of execution.
 
 
 55
 Because I would deny the writ, I respectfully dissent.
 
 
 
 [1]
 Under the AEDPA, exhaustion is not waived unless "the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). That is a highly unlikely event
 
 
 [2]
 Despite the dissent's allusion to the district court's order of January 6, 1995, there is not the slightest hint that the order was intended to, or did, preclude the filing of a habeas corpus application by Kelly. That is underscored by the fact that he does not argue that the order had that effect
 
 
 [1]
 A 1995 examining psychiatrist's report concludes, in part:
 [B]eginning in January 1990 he [Kelly] has been repeatedly diagnosed as suffering from a psychotic disorder, with such symptoms as delusions, hallucination, inappropriate affect, social withdrawal, bizarreness, fragmentation of thinking, and incoherence. As recently as August 1992 several members of the psychiatric staff at San Quentin evaluated the Petitioner, and concluded that they were unable to ascertain that he was sane.
 The report further concluded:
 [H]e is now suffering form [sic.] a psychotic mental disorder of such severity that it precludes his capacity to appreciate his current legal position and make rational choices with respect to the current court proceedings.
 
 
 [2]
 Most of this time, of course, was before the AEDPA became effective, when there was no statute of limitations for habeas petitions
 
 
 [3]
 Unable to dispute that the district court has imposed such a stay and that it is still in effect, the majority falls back on the perplexing argument that, despite its plain meaning, the district court's order does not mean what it says. Unfortunately, the parties are unable so easily to ignore the order's plain meaning and the record demonstrates that they have abided by the stay
 
 
 [4]
 A habeas petition is also required to be verified personally by the petitioner, Rule 2(c), Rules Governing § 2254 Cases in the U.S. Dist. Courts ("The petition ... shall be signed under penalty of perjury by the petitioner."), a requirement which the district court has not yet determined that Kelly is able to fulfill
 
 
 [5]
 The order originally did contain provisions regarding the next friend acting on Kelly's behalf with regard to internal prison matters, but those provisions were deleted by the district court after the State objected
 
 
 [6]
 Even before Ford v. Wainwright, California had enacted procedures to insure that it does not execute insane persons. See 477 U.S. at 408 n. 2, 106 S.Ct. at 2601 n. 2; see also Cal.Penal Code §§ 3701 (providing procedure to inquire into capital prisoner's sanity), 3703 (providing for confinement of insane capital prisoner in medical facility until sanity is restored)