**Arthur CALDERON, Warden, California State Prison, San Quentin, Petitioner,**

**v.**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, Respondent,**

No. 97–70277.

United States Court of Appeals, Ninth Circuit.

Argued by Telephone Conference Call and Submitted April 11, 1997.

Decided April 17, 1997.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Oct. 29, 1997.

Patti W. Ranger, Deputy Attorney General, San Diego, CA, for Petitioner.

Karen S. Schryver, California Appellate Project, San Francisco, CA; Richard C. Neuhoff, San Francisco, CA, for Real Party In Interest.

Before: KOZINSKI, THOMPSON and TROTT, Circuit Judges.

KOZINSKI, Circuit Judge.

We decide whether the one-year time limit for filing a petition for writ of habeas corpus, enacted in section 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), P.L. 104–132, 1996 U.S.C.C.A.N. (110 Stat.) 1214, 1217, is a statute of limitations subject to equitable tolling or an inflexible limitation on federal court jurisdiction.

## I. Background

Real party in interest Rodney Gene Beeler was convicted of first-degree murder by a California jury and sentenced to death. He unsuccessfully pursued a direct appeal in the state courts, *see People v. Beeler,* 9 Cal.4th 953, 39 Cal.Rptr.2d 607, 891 P.2d 153 (1995), ending with the Supreme Court's denial of his petition for writ of certiorari on January 8, 1996. *See Beeler v. California,* —— U.S. ——, 116 S.Ct. 723, 133 L.Ed.2d 675 (1996). Prior to that date, the California Supreme Court had also denied Beeler's petition for writ of habeas corpus. Having thus exhausted his state remedies, Beeler filed a pro se request for appointment of counsel and stay of execution in federal district court. The court granted Beeler's motion for a stay and appointed counsel, Scott Braden and Karen Schryver, to represent him. It also entered an order requiring Beeler to file his habeas petition by March 25, 1997.

Before Beeler's petition was prepared, Braden gave notice that he planned to take employment in Oklahoma and asked the district court for leave to withdraw. The district court granted Braden's request, and Schryver, who was already bogged down in a number of other capital cases, was promoted to lead counsel. Another lawyer, Richard Neuhoff, was appointed as second chair.

On February 3, 1997, Beeler's lawyers asked the district court to extend the filing date for his writ of habeas corpus and equitably toll AEDPA's one-year deadline for filing his petition. The district court granted Beeler's motion. It concluded that the time limit was not a jurisdictional bar but a statute of limitations subject to tolling, and gave Beeler until October 13, 1997, to file his petition. Calderon, the warden of San Quentin, then filed a petition for writ of mandamus in this court, seeking review of the district court's decision.

## II. Propriety of Mandamus Review

■ Although a district court's interlocutory decisions are not generally reviewable, we are authorized to entertain petitions for writ of mandamus in cases that present "questions of law of major importance to the administration of the district courts." *State of Arizona v. United States Dist. Ct. (In re Cement Antitrust Litig.),* 688 F.2d 1297, 1307 (9th Cir.1982). We decide whether review by mandamus is appropriate by weighing the following five factors:

(1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief he desires;

(2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal;

(3) whether the district court's order is clearly erroneous as a matter of law;

(4) whether the district court's order is an oft repeated error or manifests persistent disregard for the federal rules; and

(5) whether the district court's order raises new and important problems or issues of law of first impression.

*Calderon v. United States Dist. Ct.,* 98 F.3d 1102, 1105 (9th Cir.1996) (citing *Bauman v. United States Dist. Ct.,* 557 F.2d 650, 654–55 (9th Cir.1977), *aff'd* 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983)), *petition for*

*cert. filed,* —— U.S.L.W. ——, (Mar. 17, 1997) (No. 96–8402).

■ Here, the first two *Bauman* factors militate in favor of reaching the question raised by Calderon's petition. The essence of the state's claim is that it is entitled to go forward with Beeler's execution if he does not file a petition by AEDPA's anniversary date, April 23, 1997. By its nature, this claim cannot be vindicated on direct appeal from a final judgment, which would take place long after that date. The fifth *Bauman* factor is also satisfied here. A large number of state prisoners are in Beeler's position, needing to file petitions quickly in order to comply with the Act, but uncertain as to whether AEDPA's time-limit can be extended. As no other circuit has yet decided this question, and we are rapidly approaching the one-year anniversary of AEDPA's passage, the question presented by Calderon's petition must be answered as promptly as possible. We therefore turn to the merits of the petition.

### III. Mechanics of the Time Limit

■ Prior to AEDPA's enactment, state prisoners had almost unfettered discretion in deciding when to file a federal habeas petition.[1] Even delays of more than a decade did not necessarily bar a prisoner from seeking relief. *E.g., Lonchar v. Thomas,* —— U.S. ——, ——, 116 S.Ct. 1293, 1295, 134 L.Ed.2d 440 (1996). AEDPA dramatically changed this landscape, shortening the time for filing a federal habeas petition to one year. Section 101 of AEDPA amended 28 U.S.C. § 2244 by adding the following provision:

> (d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to

the judgment of a State court. The limitation period shall run from the latest of—

> (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Under this section, Beeler is required to file his habeas petition within one year of the date his process of direct review came to an end. The Supreme Court denied his petition for writ of certiorari on January 8, 1996, so if AEDPA's one-year limit were deemed to start prior to April 24, 1996, the date of the statute's enactment, Beeler's last chance to file a habeas petition would have expired on January 7, 1997.[2]

But applying section 101's limitation period in this fashion would impermissibly "attach[ ]

---

**1.** The only pre-AEDPA time limit on filing habeas petitions was imposed by Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts, which allowed a district court to dismiss a petition if "it appears that the state ... has been prejudiced in its ability to respond to the petition by delay in filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred."

**2.** We assume Beeler's year began to run on the date his petition for certiorari was denied only

because the precise date does not affect the outcome of this case. Section 101 does not, in fact, start a prisoner's one-year clock running until "the date on which the judgment became final by conclusion of direct review." While the Supreme Court's denial of a certiorari petition does generally mark the end of direct review, this date is not necessarily the date the judgment becomes final. In federal court, for example, a judgment does not become final following appeal until the case is returned to district court and the mandate is spread. *See* 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3987, at 687 n. 2 (2d ed. 1996)

new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994). Those state prisoners whose year had elapsed prior to AEDPA's enactment would be altogether barred from filing petitions that would have been timely under the old regime. Those prisoners who had some days remaining before their year elapsed would face dire consequences for having wasted the time prior to AEDPA's enactment: They would have to investigate, prepare and file a petition in however much time remained—perhaps as little as one day.

We therefore conclude—along with the Second and Seventh Circuits—that AEDPA's one-year time limit did not begin to run against any state prisoner prior to the statute's date of enactment. *See Reyes v. Keane*, 90 F.3d 676, 679 (2d Cir.1996) (allowing AEDPA's time limit to run from date prior to enactment "would be entirely unfair and a severe instance of retroactivity"); *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir.1996) (en banc) ("Courts treat a reduction in the stat-

ute of limitations as a rule for new cases only."), *cert. granted,* —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997); *see also United States v. Lopez*, 100 F.3d 113, 116–17 (10th Cir.1996) (rejecting retroactive application of parallel one-year limit for filing of federal petitions under 28 U.S.C. § 2255). No petition filed on or before April 23, 1997—one year from the date of AEDPA's enactment—may be dismissed for failure to comply with the section 101's time limit. *See Texaco, Inc. v. Short,* 454 U.S. 516, 527 n. 21, 102 S.Ct. 781, 791 n. 21, 70 L.Ed.2d 738 (1982) (new statutes of limitation must allow "a reasonable time after they take effect for the commencement of suits upon existing causes of action" (quoting *Wilson v. Iseminger*, 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902))); *Lindh*, 96 F.3d at 866 (AEDPA's time limit is "short enough that the 'reasonable time' after April 24, 1996, and the one-year statutory period coalesce").[3]

## IV. Can the One–Year Limit Be Tolled?

 Beeler, along with many other prisoners, thus has at least until April 23, 1997,

---

("Issuance of the appellate mandate returns the case to the district court."). Assuming that similar procedures prevail in the state courts, the date of final judgment may not be the same as the date certiorari is denied. We express no opinion as to which of these dates triggers section 101's time-limit.

3. AEDPA does apply in this case. AEDPA applies only to cases that were not pending when it was enacted. *See Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059 (1997). When AEDPA was enacted on April 24, 1996, Beeler had filed his request for appointment of counsel and stay of execution, but not his application for a writ of habeas corpus. Beeler argues that filing the request for appointment of counsel commenced his case, hence his case was pending on AEDPA's enactment date. *Brown v. Vasquez*, 952 F.2d 1164 (9th Cir.1991), and *McFarland v. Scott*, 512 U.S. 849, 856–57, 114 S.Ct. 2568, 2572–73 (1994), did hold that for certain purposes a habeas proceeding commences with the filing of such a request. However, those purposes were narrowly confined to the operation of 21 U.S.C. § 848(q)(4)(B), which provides for the appointment of counsel to capital-defendants in post-conviction proceedings. Subsequent cases have noted the limits of *McFarland. See, e.g., Sterling v. Scott*, 57 F.3d 451, 456 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 715 (1996); *In re Parker*, 49 F.3d 204, 210 (6th Cir.1995); *Steffen v. Tate*, 39 F.3d 622, 627 (6th Cir.1994).

Here we don't face the same policy concern which drove *Brown* and *McFarland;* we are in-

terpreting a different statute. Rule 11 of the Rules Governing § 2254 Cases says "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules." Filing an application for a writ is analogous to filing a complaint, which commences a civil case under Fed.R.Civ.P. 3.

Drawing this analogy to Fed.R.Civ.P. 3 is not inconsistent with the habeas rules. Applying AEDPA to petitioners such as Beeler does put pressure on them to file their application within the limitation period, even if the state has not yet appointed counsel. However, that pressure is due to the working of AEDPA itself. The AEDPA limitations provisions treat the application for a writ, and only that, as commencing a case: Absent the equitable considerations present here, a prisoner must apply for a writ—not just ask for a lawyer—within the one year or six month limitations period. *See* AEDPA §§ 101, 107(a). A prisoner who had not requested counsel before April 24, 1996, would certainly have to apply for a writ within the limitations period. We merely hold that those provisions apply equally to prisoners who had requested counsel but not applied for a writ as of April 24, 1996. We conclude that, for purposes of determining cases to which AEDPA applies, a case is pending when the application for a writ of habeas corpus is filed. *Accord Holman v. Gilmore*, 126 F.3d 876 (7th Cir.1997).

to file his habeas petition. The district court went one step farther and, based on its conclusion that AEDPA's one-year limit could be equitably tolled, extended Beeler's deadline to October 17, 1997. We will upset this decision on petition for writ of mandamus only if the district court's decision was "clearly erroneous as a matter of law." *Bauman,* 557 F.2d at 654–55.

The district court's interpretation of AEDPA's limitation period was not, however, clearly erroneous. It was, rather, clearly correct. Unlike other parts of AEDPA, section 101 is remarkably lucid. It is phrased only as a "period of limitation," and "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394, 102 S.Ct. 1127, 1133, 71 L.Ed.2d 234 (1982). Nor does the jurisdictional provision of the habeas statute, 28 U.S.C. § 2241, "limit jurisdiction to those cases in which there has been a timely filing" in the district court. *Zipes,* 455 U.S. at 393, 102 S.Ct. at 1132. Indeed, both the Supreme Court and this court have repeatedly held that timing provisions even more unyieldingly phrased than AEDPA's are statutes of limitations subject to tolling. *See, e.g., Burnett v. New York Cent. R.R.,* 380 U.S. 424, 426, 85 S.Ct. 1050, 1053, 13 L.Ed.2d 941 (1965) ("[N]o action shall be maintained ... unless commenced within three years of the day the cause of action accrued."); *William G. Tadlock Const. v. United States Dept. of Defense,* 91 F.3d 1335, 1340 (9th Cir.1996) ("[C]omplaint may not be filed more than 180 days after the later of the date on which the violation is alleged to have occurred or was discovered.").[4]

AEDPA's legislative history, were it necessary to consult it, speaks with equally resounding clarity. Neither the conference report, *see* H.R.Conf.Rep. 104–518, at 111

(1996), *reprinted in* 1996 U.S.C.C.A.N. 944, nor any statements of individual House or Senate members, describe the one-year limitation as a restriction on federal court jurisdiction. Many members of Congress—including AEDPA's authors in the Senate and its sponsors in the House—did, however, describe section 101 as a "statute of limitations." *See, e.g.,* 142 Cong.Rec. S3472 (daily ed. Apr. 17, 1996) (statement of Sen. Specter) (AEDPA designed to "impose a statute of limitations on the filing of habeas corpus petitions"); 141 Cong.Rec. S7805 (daily ed. June 7, 1995) (statement of Sen. Hatch) (under current law, there is no "statute of limitations" on filing habeas petitions); 142 Cong.Rec. H3606 (daily ed. Apr. 18, 1996) (statement of Rep. Hyde) ("Now, we have a 1–year statute of limitations in habeas."); 141 Cong.Rec. S7838 (daily ed. June 7, 1995) (statement of Sen. Cohen) ("I support a statute of limitations for filing habeas petitions."); *id.* at S7840 (statement of Sen. Biden) ("I agree with my Republican colleagues from Utah and Pennsylvania that we ought to have a strict statute of limitations and a strict limit on successive petitions.").

■ Calderon nevertheless argues that allowing the one-year limit to be tolled will undermine the statute's purpose "to halt the unacceptable delay which has developed in the federal habeas process." Petition for Writ of Mandamus, at 12. A one-year statute of limitations will, however, serve this goal quite well; not as well as a strict jurisdictional bar to be sure, but section 101's time-limit will doubtless speed up the habeas process considerably. Equitable tolling will not be available in most cases, as extensions of time will only be granted if "extraordinary circumstances" beyond a prisoner's control make it impossible to file a petition on time. *Alvarez–Machain v. United States,* 107 F.3d

---

4. *United States v. Brockamp,* —— U.S. ——, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), is not to the contrary. In *Brockamp,* the Court held that a time-limit on filing tax refund claims was a jurisdictional bar, not a tollable statute of limitations. The statute at issue there was, however, phrased in "a highly detailed technical manner, that linguistically speaking, cannot easily be read as containing implicit exceptions." *Id.* at ——, 117 S.Ct. at 851. AEDPA's one-year limit is neither detailed nor technical; it reads like an everyday,

run-of-the-mill statute of limitations. Moreover, *Brockamp* also relied heavily on the fact that in administering a tax system, it is sometimes necessary "to pay the price of occasional unfairness in individual cases ... in order to maintain a more workable" regime. *Id.* at ——, 117 S.Ct. at 852. While such "occasional" injustices may be a necessary price of tax administration, they are decidedly not an acceptable cost of doing business in death penalty cases.

696, 701 (9th Cir.1997). We have no doubt that district judges will take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted.

Calderon also claims that interpreting section 101 as a tollable statute of limitations is inconsistent with the Act's overall structure. This claim is based on the observation that section 107 of the Act—which contains a parallel timing provision governing prisoners represented by competent counsel on state habeas—expressly provides for a 30–day tolling period.[5] So the argument goes, we can infer from the existence of section 107's tolling provision that Congress must not have intended to allow section 101's limitation period to be tolled.

The Supreme Court has cautioned against using this kind of negative inferential reasoning, because such "excursion[s] into extrapolation of legislative intent" are most often "entirely unilluminating." *Cort v. Ash,* 422 U.S. 66, 83 n. 14, 95 S.Ct. 2080, 2090 n. 14, 45 L.Ed.2d 26 (1975). Indeed, the more reasonable inference to be drawn from Congress's inclusion of a 30–day tolling limit in section 107 runs contrary to that proffered by Calderon. Statutes of limitations are presumptively subject to equitable tolling. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990) ("[T]he same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States."); *United States v. Locke,* 471 U.S. 84, 94 n. 10, 105 S.Ct. 1785, 1792 n. 10, 85 L.Ed.2d 64 (1985) ("Statutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling."). Section 107's 30–day tolling limit was therefore probably designed to cap what would have otherwise been an unlimited tolling period. Because section 101 contains no similar restriction, we can infer that Congress did not intend to upset the normal default rule allowing longer tolling periods.

Every relevant signal—from the Act's plain language, to its legislative history, to its structure—points in the same direction: Section 101's one-year timing provision is a statute of limitations subject to equitable tolling, not a jurisdictional bar.

## V. The District Court's Decision to Toll

 Having decided that section 101's time-limit can be tolled, we have no basis for upsetting the district court's decision to allow Beeler more time to file his petition. The district court found that Beeler's lead counsel, Scott Braden, had diligently pursued the preparation of Beeler's petition. Braden, however, withdrew after accepting employment in another state, and much of the work product he left behind was not usable by replacement counsel—a turn of events over which Beeler had no control. There were thus "extraordinary circumstances" which justified tolling section 101's statute of limitations. *Alvarez–Machain,* 107 F.3d at 701.

Petition for writ of mandamus **DENIED.**

---

**5.** Section 107's timing provision provides:
 "The time requirements established [for capital cases from opt-in states] shall be tolled ... during an additional period not to exceed 30 days, if ... a showing of good cause is made for failure to file the habeas corpus application within the time period established by this section."
28 U.S.C. § 2263(b)(3)(B).