Nels SPERLING, Petitioner,

v.

Theo WHITE, Warden, et al., Respondents.

No. CV 98–3424–CAS(E).

United States District Court, C.D. California.

Dec. 11, 1998.

Mel Sperling, pro se.

Peggy J. Bradford, Deputy Attorney General, Los Angeles, CA, for Respondent.

ORDER ADOPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

SNYDER, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge. The Court approves and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein by United States mail on Petitioner and counsel for Respondents.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

EICK, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Christina A. Snyder, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

### PROCEEDINGS

Petitioner filed a "Petition for Writ of Habeas Corpus by a Person in State Custody" ("Petition") on May 4, 1998. Respondents filed a Motion for Summary Dismissal of Petition on June 26, 1998 ("Motion"), contending the Petition is barred by 28 U.S.C. section 2244(d), the applicable statute of limitations. Petitioner filed a response to the Motion on July 17, 1998. Petitioner filed a Traverse on September 15, 1998.

### BACKGROUND

On November 2, 1987, Petitioner pled guilty to numerous state charges. Thereafter, Petitioner filed two petitions for writs of habeas corpus with the Los Angeles County Superior Court. The Superior Court denied the petitions on February 7, 1996 and February 28, 1996.

In March 1996, Petitioner filed two petitions for writs of habeas corpus with the California Court of Appeal. The California Court of Appeal denied the petitions on June 7, 1996.

On July 11, 1996, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court. The California Supreme Court denied the petition on September 25, 1996.

On August 15, 1996, Petitioner filed his second petition for writ of habeas corpus with the California Supreme Court. On October 30, 1996, the California Supreme Court denied the petition.

On December 9, 1996, Petitioner filed a petition for writ of habeas corpus in federal court. On October 20, 1997, this Court denied and dismissed the petition without prejudice for failure to exhaust available state remedies.[1]

On November 17, 1997, Petitioner filed his third petition for writ of habeas corpus with the California Supreme Court. The California Supreme Court denied the petition on March 25, 1998, citing *In re Swain*, 34 Cal.2d 300, 304, 209 P.2d 793 (1949), *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993), and *In re Miller*, 17 Cal.2d 734, 735, 112 P.2d 10 (1941).

### DISCUSSION [2]

#### A. *The Issue Presented*

Petitioner's convictions became final in 1987. However, the Ninth Circuit has determined that the one year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("the Act" or "the AEDPA") "did not begin to run against any state prisoner prior to the statute's [April 24, 1996] date of enactment." *Calderon v. United States Dist. Ct.*, 128 F.3d 1283, 1287 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998). Thus, absent tolling, Petitioner had one year (365 days) from April 24, 1996,[3] in which to file a

---

1. The fault for any significant delay during this proceeding lies with Petitioner. On September 2, 1997, after receiving two extensions of time, Petitioner filed a Supplemental Traverse. In this Supplemental Traverse, Petitioner attempted to raise new claims in this Court which he had not yet presented to the California Supreme Court. This attempt precipitated the Court's dismissal of the proceeding without prejudice.

2. The Court assumes *arguendo* all of Petitioner's petitions were "properly filed" within the meaning of 28 U.S.C. section 2244(d). *Compare Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir.1998);

*Joyner v. Vacco*, 1998 WL 633664 (S.D.N.Y. 1998); *Jones v. Cain*, 1998 WL 485693 (E.D.La. 1998); *Ellis v. Johnson*, 11 F.Supp.2d 695, 698 (N.D.Tx.1998); *United States v. Gilmore*, 26 F.Supp.2d 1035, 1998 WL 372060 (N.D.Ill.1998); *with Hill v. Keane*, 984 F.Supp. 157, 158–59 (E.D.N.Y.1997); *Valentine v. Senkowski*, 966 F.Supp. 239, 241 (S.D.N.Y.1997).

3. Under certain circumstances not here present, commencement of the statute of limitations may be delayed beyond April 24, 1996. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

petition for writ of habeas corpus in federal court. *See* 28 U.S.C. § 2244(d)(1) & (2) ("section 2244").

A total of 739 days elapsed between April 24, 1996, and May 4, 1998, the date Petitioner filed the present Petition. Four of Petitioner's habeas petitions filed with the California state courts tolled the statute of limitations for a total of 285 days.[4] *See* 28 U.S.C. § 2244(d)(2).[5] Accordingly, 454 days remain untolled by state post-conviction proceedings, or 89 days more than the 365 days permitted by the Act.

Petitioner had a petition pending in federal court for a total of 316 days. Thus, if section 2244(d)(2) tolls limitations during the pendency of federal habeas petitions, the present Petition would be timely; if section 2244(d)(2) does not toll limitations during the pendency of federal habeas petitions, the present Petition would be untimely.

Therefore, this Court must determine whether the AEDPA contemplates application of section 2244(d)(2) to collateral proceedings pending in federal court. At the core of this issue is the compass of section 2244(d)(2)'s phrase "a properly filed application for State post-conviction or other collateral review." Respondents argue the phrase encompasses only applications pending in *state* court. Petitioner conceivably would argue the phrase also encompasses non-state applications, including federal habeas petitions.

■ In interpreting a statute, the Court " 'look[s] first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress'. Then, if the language of the statute is unclear," the Court may look to the traditional canons of statutory interpretation and to the statute's legislative history. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 830–31 (9th Cir.1996)(quoting *Alarcon v. Keller Indus. Inc.*, 27 F.3d 386, 389 (9th Cir. 1994)); *see Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

B. *The Language of 28 U.S.C. Section 2244(d)*

"(d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

"(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

"(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

"(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

"(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

"(2) The time during which a *properly filed application for State post-conviction or other collateral review* with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244 (emphasis added).

C. *Plain Reading of the Statute*

■ "[T]he meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *see United States Nat'l Bank v. Independent Ins.*

---

**4.** Only those petitions pending on or after April 24, 1996 can toll limitations.

**5.** Title 28 U.S.C. section 2244(d)(2) states: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

*Agents of America,* 508 U.S. 439, 454, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993)("[a] statute's plain meaning must be enforced"); *Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)("when a statute speaks with clarity to an issue[,] judicial inquiry ... is finished").

■ In determining whether a statute is plain, the "first criterion in the interpretive hierarchy" is a "natural reading" of the statutory language. *United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921, 927, 137 L.Ed.2d 107 (1997); *see Rake v. Wade,* 508 U.S. 464, 473, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993); *Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 476–77, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992); *Patterson v. Shumate,* 504 U.S. 753, 757–58, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *Ardestani v. I.N.S.,* 502 U.S. 129, 135, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991); *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Interstate Commerce Comm'n v. Texas,* 479 U.S. 450, 456–57, 107 S.Ct. 787, 93 L.Ed.2d 809 (1987). When the Court can envision more than one "natural reading" of a statute, the Court must determine the "more natural reading." *Interstate Commerce Comm'n v. Texas,* 479 U.S. at 456–57, 107 S.Ct. 787.

■ A " 'cardinal principle of statutory construction ... [is] to give effect, if possible, to every clause and word of a statute.' " *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 1166, 137 L.Ed.2d 281 (1997)(quoting *United States v. Menasche,* 348 U.S. 528, 538, 75 S.Ct. 513, 99 L.Ed. 615 (1955)); *see Walters v. Metropolitan Educ. Enter.,* 519 U.S. 202, 117 S.Ct. 660, 664, 136 L.Ed.2d 644 (1997)("Statutes must be interpreted, if possible, to give each word some operative effect."); *Gade v. National Solid Wastes Mangt. Ass'n,* 505 U.S. 88, 100, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992); *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937); *Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883).

■ "[S]tatutory language must always be read in its proper context. 'In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.' " *McCarthy v. Bronson,* 500 U.S. 136, 139, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991)(quoting *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)); *see Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997)("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)("[i]n determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy"); *United States v. American Trucking Ass'n, Inc.,* 310 U.S. 534, 542, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

■ A natural reading of the statute concludes that section 2244(d)(2) does not contemplate tolling limitations during the time a habeas petition is pending in federal court. The conclusion that the word "State" modifies both "post-conviction" and "other collateral review" in the phrase "a properly filed application for State post-conviction or other collateral review," accords the statute its natural reading. *See generally United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921, 927–28, 137 L.Ed.2d 107 (1997); *Patterson v. Shumate,* 504 U.S. 753, 757–58, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *Ardestani v. I.N.S.,* 502 U.S. 129, 135, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991); *Interstate Commerce Comm'n v. Texas,* 479 U.S. 450, 456–57, 107 S.Ct. 787, 93 L.Ed.2d 809 (1987).

Conceivably, Petitioner would urge the Court to adopt a strained reading of the statute that would assume the word "State" modifies the words "post-conviction" and the word "review," but not the intervening words "other collateral." Petitioner thereby would contend the phrase "other collateral review" refers to something other than "State" review, such as federal collateral review. It might be argued that the words "other collateral" otherwise would have no meaning.

■ Even if the statute could be read as suggested, the Court would enforce the "more natural reading." *See Interstate Com-*

*merce Comm'n v. Texas,* 479 U.S. 450, 456–57, 107 S.Ct. 787, 93 L.Ed.2d 809 (1987). As other courts have found, Petitioner's conceived interpretation would not be the more natural reading. *See Aubrey v. Palmer,* CV 98–1901–LGB(Mc) (C.D.Cal.1998); *Plaza v. Lindsey,* CV 98–2207–RAP(RNB) (C.D.Cal. 1998); *Shynovick v. Madding,* CV 98–4752–CM(SH) (C.D.Cal.1998); [6] *cf. Davis v. Cambra,* 1998 WL 738003 (N.D.Cal.1998); *see also Kethley v. Berge,* 14 F.Supp.2d 1077 (E.D.Wis.1998)("time is not tolled [under section 2244(d)(2) ] while an improperly filed federal habeas petition is gathering dust on district court shelves"); *Babcock v. Duncan,* 1997 WL 724450 *2 (N.D.Cal.1997)("[n]o court has found that the running of the limitation period also is tolled ... for the time period during which a properly filed application for post-conviction or other collateral review is pending in federal court"); *see generally Ashmus v. Calderon,* 977 F.Supp. 987, 993 (N.D.Cal.1997)(implicitly finding that a petition pending in federal court would "not toll[ ] the statute of limitations on any of [petitioner's] claims").

Furthermore, and contrary to Petitioner's apparent argument, the Court's reading of the statute does not leave the words "other collateral" without any meaning. In regard to the phrase "a properly filed application for State post-conviction or other collateral review," legislative history suggests Congress intended the words "other collateral review" to refer to a state petition for clemency filed with the governor, rather than to a federal habeas petition filed in federal court. *See* 141 Cong. Rec. $7803–01, $7825–26 (Sen. Orrin Hatch, June 7, 1995)(appearing to describe a state petition for clemency as a form of collateral review, but distinct from judicial post-conviction review). Thus, the words "other collateral review" are not surplusage under the Court's construction of the statute. *See Walters v. Metropolitan Educ. Enter.,* 519 U.S. 202, 117 S.Ct. 660, 664, 136 L.Ed.2d 644 (1997)("Statutes must be interpreted, if possible, to give each word some operative effect.").

Rather, only under Petitioner's apparent construction of the statute would the statute carry surplusage. Under such a construction, the word "State" would be surplusage.

A review of the overall object and policy of the Act buttresses the conclusion that Congress did not intend to toll limitations during the time a petition is pending in federal court. The object of the AEDPA statute of limitations is to place finite restrictions upon the time within which a petitioner may file a petition in federal court. *See Calderon v. United States Dist. Ct.,* 128 F.3d 1283, 1286 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998)("Prior to the AEDPA's enactment, state prisoners had almost unfettered discretion in deciding when to file a federal habeas petition .... [The] AEDPA dramatically changed this landscape, shortening the time for filing a federal habeas petition to one year."). Allowing tolling during the pendency of federal petitions would permit a petitioner to toll indefinitely the statute of limitations through the stratagem of filing a series of unexhausted petitions in federal court. The object and policy the AEDPA's statute of limitations would not be served if the Court were to read into the statute such an invitation to abuse.

Congress also sought, through the AEDPA, to promote efficiency in the collateral review of state convictions. *See* 141 Cong. Rec. $7803–01, $7825 (Sen. Orrin Hatch, June 7, 1995); 141 Cong. Rec. $7596–02, $7597; (Sen. Orrin Hatch, May 26, 1995); *see also Calderon v. United States Dist. Ct.,* 128 F.3d at 1286. Congress wanted an eventual end to the review process so that genuine finality can be accorded to those state convictions that withstand the review process. *See id.* Congress understood that, prior to federal collateral review, a petitioner must exhaust available state court remedies. *See* 28 U.S.C. § 2254(b). Tolling limitations while a petitioner does so serves the statute's object and policy; during the pendency of state court applications requisite to federal review, the review process progresses toward finali-

**6.** A court may look to other courts' conclusions on the issue of plain meaning of a statute to support its own conclusion on the issue. *See generally West Virginia Univ. Hosp. v. Casey,* 499 U.S. 83, 97, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *Bowen v. Massachusetts,* 487 U.S. 879, 882–83, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

ty. When a petitioner files an *unexhausted* petition in federal court, however, the review process does not progress toward finality. The review process remains at a standstill, until the petitioner later returns to state court to exhaust available state remedies as to all claims pursued.[7] Tolling limitations while the review process remains at this standstill would not serve the overall object and policy of the AEDPA. *See Calderon v. United States Dist. Ct.,* 128 F.3d 1283, 1288 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998)(the statute of limitations serves the goal of halting unacceptable delay by speeding up the habeas process); *Calderon v. United States Dist. Ct.,* 127 F.3d 782, 785 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1395, 140 L.Ed.2d 653 (1998)(by creating a statute of limitations, Congress intended to "halt the unacceptable delay which has developed in the federal habeas process") (citation omitted); *see also McCarthy v. Bronson,* 500 U.S. 136, 139, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991)("In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.")(internal quotations omitted).[8]

#### D. *Traditional Canons of Statutory Interpretation*

To the extent a statute is not "plain," courts may resort to traditional canons of statutory interpretation to help determine the intent of Congress. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). As discussed in the preceding section, this Court finds that section 2244(d)(2) plainly does not toll limitations during the pendency of federal habeas petitions. Even if the statute were not "plain," however, the applicable canons of statutory interpretation would support the conclusion that Congress did not intend to toll limitations during the pendency of federal habeas petitions.

■ The canon *expressio unius est exclusio alterius* strongly supports this conclusion. This canon instructs that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (citation omitted); *see Madrid v. Gomez,* 150 F.3d 1030, 1037 (9th Cir.1998); *see also Ex parte McCardle,* 74 U.S. 506, 7 Wall. 506, 513, 19 L.Ed. 264 (1868).

When Congress intended the AEDPA to apply to *both* federal and state post-conviction review, Congress specifically so stated. For instance: (1) newly created section 2254(i) states "during Federal or State collateral post-conviction proceedings ..."; (2) newly created section 2261(e) states "during State or Federal post-conviction proceedings ... [and] at any phase of State or Federal post-conviction proceedings ..."; and (3) newly created section 2264(a)(3) states "in time to present the claim for State or Federal post-conviction review." By contrast, Congress did not use the word "Federal" in newly created section 2244(d)(2). Thus, the canon *expressio unius est exclusio alterius* supports the conclusion Congress did not intend that section 2244(d)(2) toll limitations during the time a petition is pending in federal court. *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2065, 138 L.Ed.2d 481 (1997)(because Congress specifically provided that the AEDPA applies to pending capital cases, but failed to address the AEDPA's application to pending non-capital cases, the negative implication of Congress' failure was that Congress did not intend that the AEDPA apply to pending non-capital cases).

---

**7.** Potential petitioners have been on notice of this requirement of complete exhaustion for many years. *See Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

**8.** To the extent failure to toll limitations during the pendency of federal petitions might seem unfair in concept, or in particular application, the fault lies with Congress. Any such fault properly cannot be remedied through statutory interpretation unfaithful to Congress' intent. If a

"rule is to be amended to eliminate [ ] possibilities of injustice, it must be done by those who have the authority to amend the rules .... It is not for us as enforcers of the rule to amend it under the guise of construing it." *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 507–08, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (citations omitted)("[o]ur task in deciding this case, however, is not to fashion the rule we deem desirable but to identify the rule that Congress fashioned").

■ The canon *ejusdem generis* also supports this Court's conclusion. "Under the principle *ejusdem generis*, when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Brogan v. United States*, 522 U.S. 398, 118 S.Ct. 805, 809 n. 2, 139 L.Ed.2d 830 (1998)(*quoting Norfolk & Western R. Co. v. Train Dispatchers*, 499 U.S. 117, 129, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991)); *see Hughey v. United States*, 495 U.S. 411, 419, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990)("a general statutory term should be understood in light of the specific terms that surround it"). Application of *ejusdem generis* to the phrase "a properly filed application for State post-conviction or other collateral review," limits the definition of the general words "other collateral review" by the more specific words "State post-conviction" review. Put another way, "other collateral review" means other *State* collateral review, and does not denote an entirely new, non-state class of review.[9]

### E. *Legislative History*

To the extent a statute is not "plain," courts also may resort to the statute's legislative history to help determine the intent of Congress. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 830–31 (9th Cir.1996). As discussed in Section C, this Court finds that section 2244(d)(2) plainly does not toll limitations during the pendency of federal habeas petitions. In any event, a thorough search of the legislative history of the Act has revealed no recorded discussion of the specific issue presently before this Court. Senator Hatch, a sponsor of the Act, stated the Act's purpose was to set strict time limits in habeas cases, reduce delay, and ensure finality, but no member of Congress specifically addressed the tolling

provision. *See* 141 Cong. Rec. $7803–01, $7825 (Sen. Orrin Hatch, June 7, 1995); 141 Cong. Rec. $7596–02, $7597 (Sen. Orrin Hatch, May 26, 1995). Therefore, with the exception of the references to the limited legislative history previously discussed, resort to legislative history does not assist resolution of the statutory interpretation issue presented in this case.

### F. *"Relation Back" Concept*

■ Some courts have purported to bypass the tolling issue by "relating back" the filing of the untimely federal habeas proceeding to the filing of a previously dismissed federal habeas proceeding, citing Federal Rule of Civil Procedure 15(c). *See Anthony v. Cambra*, 1998 WL 164971 (N.D.Cal.1998); *Williams v. Vaughn*, 3 F.Supp.2d 567 (E.D.Pa.1998); *see also Kethley v. Berge*, 14 F.Supp.2d 1077 (E.D.Wis.1998)(allowed relation back as equitable relief). This purported bypass lacks any adequate basis in law. "Absent a savings statute which specifically permits a plaintiff to refile an action after a dismissal not on the merits within a limited period of time (there is no federal savings statute), the law is clear that a dismissal without prejudice leaves the situation the same as if the suit had never been brought." *Parker v. Marcotte*, 975 F.Supp. 1266, 1269 (C.D.Cal.1997)(internal quotations omitted); *accord Ford v. Sharp*, 758 F.2d 1018, 1023 (5th Cir.1985)("[f]or purposes of the statute of limitations, the plaintiff receives no credit or tolling for the time that elapsed during the pendency of the original suit"); *Humphreys v. United States*, 272 F.2d 411, 412 (9th Cir.1959)(dismissal without prejudice "leaves the situation the same as if the suit had never been brought in the first place"); *Spannaus v. U.S. Dept. of Justice*, 643 F.Supp. 698, 703 (D.D.C.1986), *aff'd.*, 824 F.2d 52 (D.C.Cir.1987)("the dismissal without prejudice did not affect the running of the

---

9. One might argue to the contrary, that "State post-conviction" review encompasses the entire field of state review, in which case "other collateral review" arguably should be read to denote some kind of collateral review other than *state* collateral review. *See United States v. Mescall*, 215 U.S. 26, 28, 30 S.Ct. 19, 54 L.Ed. 77 (1909)("where the particular words exhaust the class, the general words must be construed as embracing something outside of that class"); *see also Mid–Northern Oil Co. v. Walker*, 268 U.S. 45,

49–50, 45 S.Ct. 440, 69 L.Ed. 841 (1925); *Mason v. United States*, 260 U.S. 545, 554, 43 S.Ct. 200, 67 L.Ed. 396 (1923). As discussed above, however, the authors of the Act apparently intended a petition for clemency filed with the governor to be considered a type of state collateral review, distinct from state judicial post-conviction review. *See* 141 Cong. Rec. $7803–01, $7825–26 (Sen. Orrin Hatch, June 7, 1995). Therefore, "State post conviction" review does not necessarily encompass the entire field of state review.

statute"); *see Syms v. Chapman,* 1997 WL 561313 (S.D.Ga.1997)(petitioner, whose previous federal petition had been denied without prejudice for failure to exhaust available state remedies, could not pursue subsequent habeas petition after allowing limitations to run); *see also Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)(Supreme Court uncritically applied AEDPA to prisoner's second habeas petition even though the prisoner had filed his first petition prior to AEDPA's enactment); *Pratt v. United States,* 129 F.3d 54, 58 (1st Cir.1997)(AEDPA applied to second petition under 28 U.S.C. section 2255 even though first petition was filed prior to AEDPA's enactment).

Moreover, as discussed above, allowing petitioners to circumvent section 2244(d), simply by filing unexhausted habeas petitions in federal court, would not serve the object and policy of the AEDPA. *See supra* Section C. Indeed, application of the "relation back" concept in this context effectively would reward a petitioner who prematurely filed an unexhausted petition by according such petitioner an open-ended extension of the statute of limitations. A state prisoner wishing to insure against any future application of limitations need only file an unexhausted petition in federal court at the earliest opportunity. Years or even decades later, the "relation back" concept then would rescue any otherwise untimely petition from the bar of limitations. Congress cannot have intended such result.

### G. *Equitable Tolling*

■ The Ninth Circuit permits equitable tolling of the AEDPA statute of limitations "if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. United States Dist. Ct.,* 128 F.3d 1283, 1288 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998); *but see United States v. Beggerly,* —— U.S. ——, ——, 118 S.Ct. 1862, 1868, 141 L.Ed.2d 32 (1998)(equitable tolling not permissible where the text of the statute

of limitations defers the statute's commencement until the plaintiff knew or should have known of the existence of the claim).

■ Petitioner has not alleged, and this Court finds no indication, that extraordinary circumstances beyond Petitioner's control made it impossible to file the present Petition on time. *See Syms v. Chapman,* 1997 WL 561313 *4 (S.D.Ga. August 19, 1997)(petitioner, whose previous federal petition had been denied without prejudice for failure to exhaust available state remedies, could not pursue subsequent habeas petition after allowing limitations period to run); *United States v. Maldanado,* 1997 WL 360932 *3 (E.D.Pa. June 26, 1997)("[t]hat the defendant is not knowledgeable in the law is no excuse for failing to abide by the limitation period"); *Bolds v. Newland,* 1997 WL 732529 *2 (N.D.Cal. November 12, 1997)("[e]quitable tolling is available only when extraordinary circumstances beyond a prisoner's control make it impossible for him to file a petition on time . . . . Ignorance of the law and lack of legal assistance do not constitute such extraordinary circumstances"); *cf. United States v. Flores,* 981 F.2d 231, 236 (5th Cir.1993)(illiteracy, lack of training in the law, and failure "to appreciate the legal significance of facts" do not constitute "cause" for habeas petitioner's failure to fulfill state law procedural requirement); *Cornman v. Armontrout,* 959 F.2d 727, 729 (8th Cir. 1992)(same); *Worthen v. Kaiser,* 952 F.2d 1266, 1268–69 (10th Cir.1992)(petitioner's failure to discover the "legal significance" of the operative facts does not constitute "cause"); *Hughes v. Idaho State Bd. of Corrections,* 800 F.2d 905, 909 (9th Cir.1986)(petitioner's illiteracy does not constitute "cause").

### CONCLUSION AND RECOMMENDATION

The applicable statute of limitations commenced running on April 24, 1996, and expired long before the filing of the present Petition,[10] unless limitations were tolled during the pendency of Petitioner's prior federal habeas petition. Congress did not intend

---

**10.** The present Petition would be untimely even if the Court deemed the operative filing date of the Petition to be April 27, 1998, the date Petitioner verified the Petition. This verification date logically would constitute the earliest date

on which Petitioner could have delivered the present Petition to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Henderson v.*

that section 2244(d)(2) toll limitations during the pendency of federal habeas petitions. Neither the "relation back" concept nor equitable tolling can rescue the present Petition from the bar of limitations.[11]

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying and dismissing the Petition with prejudice.

November 6, 1998.

### NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

---

*Frank,* 155 F.3d 159 (3rd Cir.1998); *Spotville v. Cain,* 149 F.3d 374 (5th Cir.1998).

**11.** Petitioner's reliance upon California Code of Civil Procedure section 352.1(a) is misplaced. Only when Congress fails to establish a specific statute of limitations or tolling provision should federal courts borrow state law to fill the void.

*See Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Habeas petitions filed under 28 U.S.C. section 2254 are subject to the specific statute of limitations and tolling provision established in section 2244(d).