Justice Breyer
delivered the opinion of the Court.
We here decide that the timeliness provision in the federal habeas corpus statute is subject to equitable tolling. See Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. § 2244(d). We also consider its application in this case. In the Court of Appeals’ view, when a petitioner seeks to excuse a late filing on the basis of his attorney’s unprofessional conduct, that conduct, even if it is “negligent” or “grossly negligent,” cannot “rise to the level of egregious attorney misconduct” that would warrant equitable tolling unless the petitioner offers “proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth.” 539 F. 3d 1334, 1339 (CA11 2008) (per euriam). In our view, this standard is too rigid. See Irwin v. Department of Vet *635 erans Affairs, 498 U. S. 89, 96 (1990); see also Lawrence v. Florida, 549 U. S. 327, 336 (2007). We therefore reverse the judgment of the Court of Appeals and remand for further proceedings.
I
AEDPA states that “[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.” § 2244(d)(1). It also says that “[t]he time during which a properly filed application for State post-conviction ... review” is “pending shall not be counted” against the 1-year period. § 2244(d)(2).
On January 19, 2006, Albert Holland filed a pro se habeas corpus petition in the Federal District Court for the Southern District of Florida. Both Holland (the petitioner) and the State of Florida (the respondent) agree that, unless equitably tolled, the statutory limitations period applicable to Holland’s petition expired approximately five weeks before the petition was filed. See Brief for Respondent 9, and n. 7; Brief for Petitioner 5, and n. 4. Holland asked the District Court to toll the limitations period for equitable reasons. We shall set forth in some detail the record facts that underlie Holland’s claim.
A
In 1997, Holland was convicted of first-degree murder and sentenced to death. The Florida Supreme Court affirmed that judgment. Holland v. State, 773 So. 2d 1065 (2000). On October 1, 2001, this Court denied Holland’s petition for certiorari. 534 U. S. 834. And on that date — the date that our denial of the petition ended further direct review of Holland’s conviction — the 1-year AEDPA limitations clock began to run. See 28 U. S. C. § 2244(d)(1)(A); Jimenez v. Quarterman, 555 U. S. 113, 119 (2009).
Thirty-seven days later, on November 7, 2001, Florida appointed attorney Bradley Collins to represent Holland in all *636 state and federal postconvietion proceedings. Cf. Fla. Stat. §§27.710, 27.711(2) (2007). By September 19, 2002 — 316 days after his appointment and 12 days before the 1-year AEDPA limitations period expired — Collins, acting on Holland's behalf, filed a motion for postconviction relief in the state trial court. Cf. Brief for Respondent 9, n. 7. That filing automatically stopped the running of the AEDPA limitations period, § 2244(d)(2), with, as we have said, 12 days left on the clock.
For the next three years, Holland's petition remained pending in the state courts. During that time, Holland wrote Collins letters asking him to make certain that all of his claims would be preserved for any subsequent federal habeas corpus review. Collins wrote back, stating, “I would like to reassure you that we are aware of state time-limitations and federal exhaustion requirements.” App. 55. He also said that he would “presen[t]... to the .. . federal courts” any of Holland's claims that the state courts denied. Ibid. In a second letter Collins added, “should your Motion for Post-Conviction Relief be denied” by the state courts, “your state habeas corpus claims will then be ripe for presentation in a petition for writ of habeas corpus in federal court.” Id., at 61.
In mid-May 2003, the state trial court denied Holland relief, and Collins appealed that denial to the Florida Supreme Court. Almost two years later, in February 2005, the Florida Supreme Court heard oral argument in the case. See 539 F. 3d, at 1337. But during that 2-year period, relations between Collins and Holland began to break down. Indeed, between April 2003 and January 2006, Collins communicated with Holland only three times — each time by letter. See No. l:06-cv-20182-PAS (SD Fla., Apr. 27, 2007), p. 7, n. 6 (hereinafter District Court opinion), App. 91, n. 6.
Holland, unhappy with this lack of communication, twice wrote to the Florida Supreme Court, asking it to remove Collins from his case. In the second letter, filed on June 17, *637 2004, he said that he and Collins had experienced “a complete breakdown in communication.” App. 160. Holland informed the court that Collins had “not kept [him] updated on the status of [his] capital case” and that Holland had “not seen or spoken to” Collins “since April 2003.” Id., at 150. He wrote, “Mr. Collins has abandoned [me]” and said, “[I have] no idea what is going on with [my] capital ease on appeal.” Id., at 152. He added that “Collins has never made any reasonable effort to establish any relationship of trust or confidence with [me],” id., at 155, and stated that he “does not trust” or have “any confidence in Mr. Collin’s ability to represent [him],” id., at 152. Holland concluded by asking that Collins be “dismissed (removed) off his capital case” or that he be given a hearing in order to demonstrate Collins’ deficiencies. Id., at 155, 161. The State responded that Holland could not file any pro se papers with the court while he was represented by counsel, including papers seeking new counsel. Id., at 42-45. The Florida Supreme Court agreed and denied Holland’s requests. Id., at 46.
During this same period Holland wrote various letters to the Clerk of the Florida Supreme Court. In the last of these he wrote, “[I]f I had a competent, conflict-free, postconviction, appellate attorney representing me, I would not have to write you this letter. I’m not trying to get on your nerves. I just would like to know exactly what is happening with my case on appeal to the Supreme Court of Florida.” Id., at 147. During that same time period, Holland also filed a complaint against Collins with the Florida Bar Association, but the complaint was denied. Id., at 65-67.
Collins argued Holland’s appeal before the Florida Supreme Court on February 10, 2005. 539 F. 3d, at 1337. Shortly thereafter, Holland wrote to Collins emphasizing the importance of filing a timely petition for habeas corpus in federal court once the Florida Supreme Court issued its ruling. Specifically, on March 3, 2005, Holland wrote:
“Dear Mr. Collins, P. A.:
*638 “How are you? Fine I hope.
“I write this letter to ask that you please write me back, as soon as possible to let me know what the status of my case is on appeal to the Supreme Court of Florida.
“If the Florida Supreme Court denies my [postconviction] and State Habeas Corpus appeals, please file my 28 U S. C. 2254 writ of Habeas Corpus petition, before my deadline to file it runs out (expires).
“Thank you very much.
“Please have a nice day.” App. 210 (emphasis added).
Collins did not answer this letter.
On June 15, 2005, Holland wrote again:
“Dear Mr. Collins:
“How are you? Fine I hope.
“On March 3, 2005 I wrote you a letter, asking that you let me know the status of my case on appeal to the Supreme Court of Florida.
“Also, have you begun preparing my 28 U. S. C. §2254 writ of Habeas Corpus petition? Please let me know, as soon as possible.
“Thank you.” Id., at 212 (emphasis added).
But again, Collins did not reply.
Five months later, in November 2005, the Florida Supreme Court affirmed the lower court decision denying Holland relief. Holland v. State, 916 So. 2d 750 (per curiam). Three weeks after that, on December 1, 2005, the court issued its mandate, making its decision final. 539 F. 3d, at 1337. At that point, the AEDPA federal habeas clock again began to tick — with 12 days left on the 1-year meter. See Coates v. Byrd, 211 F. 3d 1225 (CA11 2000) (per curiam) (AEDPA clock restarts when state court completes postconviction review); Lawrence, 549 U. S. 327 (same). Twelve days later, on December 13, 2005, Holland’s AEDPA time limit expired.
*639 B
Four weeks after the AEDPA time limit expired, on January 9, 2006, Holland, still unaware of the Florida Supreme Court ruling issued in his case two months earlier, wrote Collins a third letter:
“Dear Mr. Bradley M. Collins:
“How are you? Fine I hope.
“I write this letter to ask that you please let me know the status of my appeals before the Supreme Court of Florida. Have my appeals been decided yet?
“Please send me the [necessary information] ... so that I can determine when the deadline will be to file my 28 U. S. C. Rule 2254 Federal Habeas Corpus Petition, in accordance with all United States Supreme Court and Eleventh Circuit case law and applicable ‘Antiterrorism and Effective Death Penalty Act/ if my appeals before the Supreme Court of Florida are denied.
“Please be advised that I want to preserve my privilege to federal review of all of my state convictions and sentences.
“Mr. Collins, would you please also inform me, as to which United States District Court my 28 U. S. C. Rule 2254 Federal Habeas Corpus Petition will have to be timely filed in and that court’s address?
“Thank you very much.” App. 214.
Collins did not answer.
Nine days later, on January 18, 2006, Holland, working in the prison library, learned for the first time that the Florida Supreme Court had issued a final determination in his case and that its mandate had issued — five weeks prior. 589 F. 3d, at 1337. He immediately wrote out his own pro se federal habeas petition and mailed it to the Federal District Court for the Southern District of Florida the next day. Ibid. The petition begins by stating,
*640 “Comes now Albert R. Holland, Jr., a Florida death row inmate and states that court appointed counsel has failed to undertake timely action to seek Federal Review in my case by filing a 28 U. S. C. Rule 2254 Petition for Writ of Habeas Corpus on my behalf.” App. 181.
It then describes the various constitutional claims that Holland hoped to assert in federal court.
The same day that he mailed that petition, Holland received a letter from Collins telling him that Collins intended to file a petition for certiorari in this Court from the State Supreme Court’s most recent ruling. Holland answered immediately:
“Dear Mr. Bradley M. Collins:
“Since recently, the Supreme Court of Florida has denied my [postconviction] and state writ of Habeas Corpus Petition. I am left to understand that you are planning to seek certiorari on these matters.
“It’s my understanding that the AEDPA time limitations is not tolled during discretionary appellate reviews, such as certiorari applications resulting from denial of state post conviction proceedings.
“Therefore, I advise you not to file certiorari if doing so affects or jeopardizes my one year grace period as prescribed by the AEDPA.
“Thank you very much.” Id., at 216 (some emphasis deleted).
Holland was right about the law. See Coates, supra, at 1226-1227 (AEDPA not tolled during pendency of petition for certiorari from judgment denying state postconviction review); accord, Lawrence v. Florida, 421 F. 3d 1221, 1225 (CA11 2005), aff’d, 549 U. S., at 331-336.
On January 26, 2006, Holland tried to call Collins from prison. But he called collect and Collins’ office would not accept the call. App. 218. Five days later, Collins wrote to *641 Holland and told him for the very first time that, as Collins understood AEDPA law, the limitations period applicable to Holland’s federal habeas application had in fact expired in 2000 — before Collins had begun to represent Holland. Specifically, Collins wrote:
“Dear Mr. Holland:
“I am in receipt of your letter dated January 20,2006 concerning operation of AEDPA time limitations. One hurdle in our upcoming efforts at obtaining federal ha-beas corpus relief will be that the one-year statutory time frame for filing such a petition began to run after the case was affirmed on October 5, 2000 [when your] Judgment and Sentence... were affirmed by the Florida Supreme Court. However, it was not until November 7, 2001, that I received the Order appointing me to the case. As you can see, I was appointed about a year after your case became final. . ..
“[T]he AEDPA time-period [thus] had run before my appointment and therefore before your [postconviction] motion was filed.” Id., at 78-79 (emphasis added).
Collins was wrong about the law. As we have said, Holland’s 1-year limitations period did not begin to run until this Court denied Holland’s petition for certiorari from the state courts’ denial of relief on direct review, which occurred on October 1, 2001. See 28 U. S. C. § 2244(d)(1)(A); Jimenez, 555 U. S., at 119; Bond v. Moore, 309 F. 3d 770, 774 (CA11 2002). And when Collins was appointed (on November 7, 2001) the AEDPA clock therefore had 328 days left to go.
Holland immediately wrote back to Collins, pointing this out.
“Dear Mr. Collins:
“I received your letter dated January 31, 2006. You are incorrect in stating that ‘the one-year statutory time frame for filing my 2254 petition began to run after my case was affirmed on October 5, 2000, by the Florida *642 Supreme Court.’ As stated on page three of [the recently filed] Petition for a writ of certiorari, October 1, 2001 is when the United States Supreme Court denied my initial petition for writ of certiorari and that is when my ease became final. That meant that the time would be tolled once I filed my [postconviction] motion in the trial court.
“Also, Mr. Collins you never told me that my time ran out (expired). I told you to timely file my 28 U. S. C. 2254 Habeas Corpus Petition before the deadline, so that I would not be time-barred.
“You never informed me of oral arguments or of the Supreme Court of Florida’s November 10, 2005 decision denying my postconviction appeals. You never kept me informed about the status of my case, although you told me that you would immediately inform me of the court’s decision as soon as you heard anything.
“Mr. Collins, I filed a motion on January 19, 2006 [in federal court] to preserve my rights, because I did not want to be time-barred. Have you heard anything about the aforesaid motion? Do you know what the status of aforesaid motion is?
“Mr. Collins, please file my 2254 Habeas Petition immediately. Please do not wait any longer, even though it will be untimely filed at least it will be filed without wasting anymore time, (valuable time).
“Again, please file my 2254 Petition at once.
“Your letter is the first time that you have ever mentioned anything to me about my time had run out, before you were appointed to represent me, and that my one-year started to run on October 5, 2000.
“Please find out the status of my motion that I filed on January 19, 2006 and let me know.
“Thank you very much.” App. 222-223.
Collins did not answer this letter. Nor did he file a federal habeas petition as Holland requested.
*643 On March 1,2006, Holland filed another complaint against Collins with the Florida Bar Association. See Record, Doc. 41, Exh. 1, p. 8. This time the bar asked Collins to respond, which he did, through his own attorney, on March 21. Id., at 2. And the very next day, over three months after Holland’s AEDPA statute of limitations had expired, Collins mailed a proposed federal habeas petition to Holland, asking him to review it. See id., Doc. 20, Exh. W.
But by that point Holland had already filed a pro se motion in the District Court asking that Collins be dismissed as his attorney. App. 192. The State responded to that request by arguing once again that Holland could not file a pro se motion seeking to have Collins removed while he was represented by counsel, i. e., represented by Collins. See id., at 47-51. But this time the court considered Holland’s motion, permitted Collins to withdraw from the case, and appointed a new lawyer for Holland. See Record, Docs. 9-10, 17-18, 22. And it also received briefing on whether the circumstances of the case justified the equitable tolling of the AEDPA limitations period for a sufficient period of time (approximately five weeks) to make Holland’s petition timely.
C
After considering the briefs, the Federal District Court held that the facts did not warrant equitable tolling and that consequently Holland’s petition was untimely. The court, noting that Collins had prepared numerous filings on Holland’s behalf in the state courts, and suggesting that Holland was a difficult client, intimated, but did not hold, that Collins’ professional conduct in the case was at worst merely “negligent.” See District Court opinion 7-8, App. 90-93. But the court rested its holding on an alternative rationale: It wrote that, even if Collins’ “behavior could be characterized as an ‘extraordinary circumstance,’” Holland “did not seek any help from the court system to find out the date [the] mandate issued denying his state habeas petition, nor *644 did he seek aid from ‘outside supporters.’” Id., at 8, App. 92. Hence, the court held, Holland did not “demonstrate” the “due diligence” necessary to invoke “equitable tolling.” Ibid.
On appeal, the Eleventh Circuit agreed with the District Court that Holland’s habeas petition was untimely. The Court of Appeals first agreed with Holland that “ ‘[ejquitable tolling can be applied to ... AEDPA’s statutory deadline.’ ” 539 F. 3d, at 1338 (quoting Helton v. Secretary for Dept. of Corrections, 259 F. 3d 1310, 1312 (CA11 2001)). But it also held that equitable tolling could not be applied in a ease, like Holland’s, that involves no more than “[pjure professional negligence” on the part of a petitioner’s attorney because such behavior can never constitute an “extraordinary circumstance.” 539 F. 3d, at 1339. The court wrote:
“We will assume that Collins’s alleged conduct is negligent, even grossly negligent. But in our view, no allegation of lawyer negligence or of failure to meet a lawyer’s standard of care — in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer’s part— can rise to the level of egregious attorney misconduct that would entitle Petitioner to equitable tolling.” Ibid.
Holland made “no allegation” that Collins had made a “knowing or reckless factual misrepresentation,” or that he exhibited “dishonesty,” “divided loyalty,” or “mental impairment.” Ibid. Hence, the court held, equitable tolling was per se inapplicable to Holland’s habeas petition. The court did not address the District Court’s ruling with respect to Holland’s diligence.
Holland petitioned for certiorari. Because the Court of Appeals’ application of the equitable tolling doctrine to instances of professional misconduct conflicts with the approach taken by other Circuits, we granted the petition. Compare 539 F. 3d 1334 (case below) with, e. g., Baldayaque *645 v. United States, 338 F. 3d 145, 152-153 (CA2 2003) (applying a less categorical approach); Spitsyn v. Moore, 345 F. 3d 796, 801-802 (CA9 2003) (same).
II
We have not decided whether AEDPA’s statutory limitations period may be tolled for equitable reasons. See Lawrence, 549 U. S., at 336; Pace v. DiGuglielmo, 544 U. S. 408, 418, n. 8 (2005). Now, like all 11 Courts of Appeals that have considered the question, we hold that § 2244(d) is subject to equitable tolling in appropriate cases. See Neverson v. Farquharson, 366 F. 3d 32, 41 (CA1 2004); Smith v. McGinnis, 208 F. 3d 13, 17 (CA2 2000) (per curiam); Miller v. New Jersey Dept. of Corrections, 145 F. 3d 616, 617 (CA3 1998); Harris v. Hutchinson, 209 F. 3d 325, 329-330 (CA4 2000); Davis v. Johnson, 158 F. 3d 806, 810 (CA5 1998); McClendon v. Sherman, 329 F. 3d 490, 492 (CA6 2003); Taliani v. Chrans, 189 F. 3d 597, 598 (CA7 1999); Moore v. United States, 173 F. 3d 1131, 1134 (CA8 1999); Calderon v. United States Dist. Ct. for Central Dist. of Cal., 128 F. 3d 1283, 1289 (CA9 1997); Miller v. Marr, 141 F. 3d 976, 978 (CA10 1998); Sandvik v. United States, 177 F. 3d 1269, 1272 (CA11 1999) (per curiam).
We base our conclusion on the following considerations. First, the AEDPA “statute of limitations defense ... is not ‘jurisdictional.’” Day v. McDonough, 547 U. S. 198, 205 (2006). It does not set forth “an inflexible rule requiring dismissal whenever” its “clock has run.” Id., at 208. See also id., at 213 (Scalia, J., dissenting) (“We have repeatedly stated that the enactment of time-limitation periods such as that in § 2244(d), without further elaboration, produces defenses that are nonjurisdictional and thus subject to waiver and forfeiture” (citing cases)); Brief for Respondent 22 (describing AEDPA limitations period as “non-jurisdictional”).
We have previously made clear that a nonjurisdictional federal statute of limitations is normally subject to a “rebut- *646 table presumption” in favor “of equitable tolling.” Irwin, 498 U. S., at 95-96; see also Young v. United States, 535 U. S. 43, 49 (2002) (“It is hornbook law that limitations periods are 'customarily subject to “equitable tolling” ’ ” (quoting Irwin, swpra, at 95)).
In the case of AEDPA, the presumption’s strength is reinforced by the fact that '"equitable principles’” have traditionally “ 'governed’ ” the substantive law of habeas corpus, Munaf v. Geren, 553 U. S. 674, 693 (2008), for we will “not construe a statute to displace courts’ traditional equitable authority absent the 'clearest command,’ ” Miller v. French, 530 U. S. 327, 340 (2000) (quoting Califano v. Yamasaki, 442 U. S. 682, 705 (1979)). The presumption’s strength is yet further reinforced by the fact that Congress enacted AEDPA after this Court decided Irwin and therefore was likely aware that courts, when interpreting AEDPA’s timing provisions, would apply the presumption. See, e. g., Merck & Co. v. Reynolds, 559 U. S. 633, 648 (2010).
Second, the statute here differs significantly from the statutes at issue in United States v. Brockamp, 519 U. S. 347 (1997), and United States v. Beggerly, 524 U. S. 38 (1998), two cases in which we held that Irwin’s presumption had been overcome. In Brockamp, we interpreted a statute of limitations that was silent on the question of equitable tolling as foreclosing application of that doctrine. But in doing so we emphasized that the statute at issue (1) “se[t] forth its time limitations in unusually emphatic form”; (2) used “highly detailed” and “technical” language “that, linguistically speaking, cannot easily be read as containing implicit exceptions”; (3) “reiterate[d] its limitations several times in several different ways”; (4) related to an “underlying subject matter,” nationwide tax collection, with respect to which the practical consequences of permitting tolling would have been substantial; and (5) would, if tolled, “require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery — a kind of tolling for which we ... found *647 no direct precedent.” 519 U. S., at 350-352. And in Beg-gerly we held that Irwin’s presumption was overcome where (1) the 12-year statute of limitations at issue was “unusually generous” and (2) the underlying claim “deal[t] with ownership of land” and thereby implicated landowners’ need to “know with certainty what their rights are, and the period during which those rights may be subject to challenge.” 524 U. S., at 48-49.
By way of contrast, AEDPA’s statute of limitations, unlike the statute at issue in Brockamp, does not contain language that is “unusually emphatic,” nor does it “reiterat[e]” its time limitation. Neither would application of equitable tolling here affect the “substance” of a petitioner’s claim. Moreover, in contrast to the 12-year limitations period at issue in Beggerly, AEDPA’s limitations period is not particularly long. And unlike the subject matters at issue in both Brockamp and Beggerly — tax collection and land claims— AEDPA’s subject matter, habeas corpus, pertains to an area of the law where equity finds a comfortable home. See Munaf, supra, at 693. In short, AEDPA’s 1-year limit reads like an ordinary, run-of-the-mill statute of limitations. See Calderon, supra, at 1288.
Respondent, citing Brockamp, argues that AEDPA should be interpreted to foreclose equitable tolling because the statute sets forth “explicit exceptions to its basic time limits” that do “not include 'equitable tolling.’ ” 519 U. S., at 351; see Brief for Respondent 27. The statute does contain multiple provisions relating to the events that trigger its running. See § 2244(d)(1); Clay v. United States, 537 U. S. 522, 529 (2003); see also Cada v. Baxter Healthcare Corp., 920 F. 2d 446, 450 (CA7 1990) (“We must... distinguish between the accrual of the plaintiff’s claim and the tolling of the statute of limitations . . . ”); Wims v. United States, 225 F. 3d 186, 190 (CA2 2000) (same); Wolin v. Smith Barney Inc., 83 F. 3d 847, 852 (CA7 1996) (same). And we concede that it is silent as to equitable tolling while containing one provision *648 that expressly refers to a different kind of tolling. See § 2244(d)(2) (stating that “[t]he time during which” a petitioner has a pending request for state postconviction relief “shall not be counted toward” his “period of limitation” under AEDPA). But the fact that Congress expressly referred to tolling during state collateral review proceedings is easily explained without rebutting the presumption in favor of equitable tolling. A petitioner cannot bring a federal habeas claim without first exhausting state remedies— a process that frequently takes longer than one year. See Rose v. Lundy, 455 U. S. 509 (1982); § 2254(b)(1)(A). Hence, Congress had to explain how the limitations statute accounts for the time during which such state proceedings are pending. This special need for an express provision undermines any temptation to invoke the interpretive maxim inclusio unius est exclusio alterius (to include one item (i. e., suspension during state-court collateral review) is to exclude other similar items (i. e., equitable tolling)). See Young, supra, at 53 (rejecting claim that an “express tolling provision, appearing in the same subsection as the [limitations] period, demonstrates a statutory intent not to toll the [limitations] period”).
Third, and finally, we disagree with respondent that equitable tolling undermines AEDPA’s basic purposes. We recognize that AEDPA seeks to eliminate delays in the federal habeas review process. See Day, 547 U. S., at 205-206; Miller-El v. Cockrell, 537 U. S. 322, 337 (2003). But AEDPA seeks to do- so without undermining basic habeas corpus principles and while seeking to harmonize the new statute with prior law, under which a petition’s timeliness was always determined under equitable principles. See Slack v. McDaniel, 529 U. S. 473, 483 (2000) (“AEDPA’s present provisions ... incorporate earlier habeas corpus principles”); see also Day, 547 U. S., at 202, n. 1; id., at 214 (Scalia, J., dissenting); 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure §24.2, pp. 1123-1136 (5th ed. 2005). *649 When Congress codified new rules governing this previously judicially managed area of law, it did so without losing sight of the fact that the “writ of habeas corpus plays a vital role in protecting constitutional rights.” Slack, 529 U. S., at 483. It did not seek to end every possible delay at all costs. Cf. id., at 483-488. The importance of the Great Writ, the only writ explicitly protected by the Constitution, Art. I, § 9, cl. 2, along with congressional efforts to harmonize the new statute with prior law, counsels hesitancy before interpreting AEDPA’s statutory silence as indicating a congressional intent to close courthouse doors that a strong equitable claim would ordinarily keep open.
For these reasons we conclude that neither AEDPA’s textual characteristics nor the statute’s basic purposes “rebut” the basic presumption set forth in Irwin. And we therefore join the Courts of Appeals in holding that § 2244(d) is subject to equitable tolling.
Ill
We have previously made clear that a “petitioner” is “entitled to equitable tolling” only if he shows “(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way” and prevented timely filing. Pace, 544 U. S., at 418 (emphasis deleted). In this case, the “extraordinary circumstances” at issue involve an attorney’s failure to satisfy professional standards of care. The Court of Appeals held that, where that is so, even attorney conduct that is “grossly negligent” can never warrant tolling absent “bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer’s part.” 539 F. 3d, at 1339. But in our view, the Court of Appeals’ standard is too rigid.
We have said that courts of equity “must be governed by rules and precedents no less than the courts of law.” Lonchar v. Thomas, 517 U. S. 314, 323 (1996) (internal quotation marks omitted). But we have also made clear that often the “exercise of a court’s equity powers .. . must be *650 made on a case-by-case basis.” Baggett v. Bullitt, 377 U. S. 360, 375 (1964). In emphasizing the need for “flexibility,” for avoiding “mechanical rules,” Holmberg v. Armbrecht, 327 U. S. 392, 396 (1946), we have followed a tradition in which courts of equity have sought to “relieve hardships which, from time to time, arise from a hard and fast adherence” to more absolute legal rules, which, if strictly applied, threaten the “evils of archaic rigidity,” Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U. S. 238, 248 (1944). The “flexibility” inherent in “equitable procedure” enables courts “to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct... particular injustices.” Ibid, (permitting postdeadline filing of bill of review). Taken together, these cases recognize that courts of equity can and do draw upon decisions made in other similar cases for guidance. Such courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.
We recognize that, in the context of procedural default, we have previously stated, without qualification, that a petitioner “must ‘bear the risk of attorney error.’ ” Coleman v. Thompson, 501 U. S. 722, 752-753 (1991). But Coleman was “a case about federalism,” id., at 726, in that it asked whether federal courts may excuse a petitioner’s failure to comply with a state court’s procedural rules, notwithstanding the state court’s determination that its own rules had been violated. Equitable tolling, by contrast, asks whether federal courts may excuse a petitioner’s failure to comply with federal timing rules, an inquiry that does not implicate a state court’s interpretation of state law. Cf. Lawrence, 549 U. S., at 341 (Ginsburg, J., dissenting). Holland does not argue that his attorney’s misconduct provides a substantive ground for relief, cf. § 2254(i), nor is this a case that asks whether AEDPA’s statute of limitations should be recognized at all, cf. Day, supra, at 209. Rather, this case asks *651 how equity should be applied once the statute is recognized. And given equity’s resistance to rigid rules, we cannot read Coleman as requiring a per se approach in this context.
In short, no pre-existing rule of law or precedent demands a rule like the one set forth by the Eleventh Circuit in this case. That rule is difficult to reconcile with more general equitable principles in that it fails to recognize that, at least sometimes, professional misconduct that fails to meet the Eleventh Circuit’s standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling. And, given the long history of judicial application of equitable tolling, courts can easily find precedents that can guide their judgments. Several lower courts have specifically held that unprofessional attorney conduct may, in certain circumstances, prove “egregious” and can be “extraordinary” even though the conduct in question may not satisfy the Eleventh Circuit’s rule. See, e. g., Nara v. Frank, 264 F. 3d 310, 320 (CA3 2001) (ordering hearing as to whether client who was “effectively abandoned” by lawyer merited tolling); Calderon, 128 F. 3d, at 1289 (allowing tolling where client was prejudiced by a last minute change in representation that was beyond his control); Baldayaque, 338 F. 3d, at 152-153 (finding that where an attorney failed to perform an essential service, to communicate with the client, and to do basic legal research, tolling could, under the circumstances, be warranted); Spitsyn, 345 F. 3d, at 800-802 (finding that “extraordinary circumstances” may warrant tolling where lawyer denied client access to files, failed to prepare a petition, and did not respond to his client’s communications); United States v. Martin, 408 F. 3d 1089, 1096 (CA8 2005) (client entitled to equitable tolling where his attorney retained files, made misleading statements, and engaged in similar conduct).
We have previously held that “a garden variety claim of excusable neglect,” Irwin, 498 U. S., at 96, such as a simple “miscalculation” that leads a lawyer to miss a filing deadline, *652 Lawrence, supra, at 336, does not warrant equitable tolling. But the ease before us does not involve, and we are not considering, a “garden variety claim” of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct. And, as we have said, although the circumstances of a ease must be “extraordinary” before equitable tolling can be applied, we hold that such circumstances are not limited to those that satisfy the test that the Court of Appeals used in this case.
IV
The record facts that we have set forth in Part I of this opinion suggest that this case may well be an “extraordinary” instance in which petitioner’s attorney’s conduct constituted far more than “garden variety” or “excusable neglect.” To be sure, Collins failed to file Holland’s petition on time and appears to have been unaware of the date on which the limitations period expired — two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland’s federal petition on time despite Holland’s many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland’s letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland’s many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.
A group of teachers of legal ethics tells us that these various failures violated fundamental canons of professional responsibility, which require attorneys to perform reasonably competent legal work, to communicate with their clients, to *653 implement clients’ reasonable requests, to keep their clients informed of key developments in their cases, and never to abandon a client. See Brief for Legal Ethics Professors et al. as Amici Curiae (describing ethical rules set forth in case law, the Restatements of Agency, the Restatement (Third) of the Law Governing Lawyers (1998), and in the ABA Model Rules of Professional Conduct (2009)). And in this case, the failures seriously prejudiced a client who thereby lost what was likely his single opportunity for federal habeas review of the lawfulness of his imprisonment and of his death sentence.
We do not state our conclusion in absolute form, however, because more proceedings may be necessary. The District Court rested its ruling not on a lack of extraordinary circumstances, but rather on a lack of diligence — a ruling that respondent does not defend. See Brief for Respondent 38, n. 19; Tr. of Oral Arg. 43, 52. We think that the District Court’s conclusion was incorrect. The diligence required for equitable tolling purposes is “‘reasonable diligence,’” see, e. g., Lonchar, 517 U. S., at 326, not “ ‘ “maximum feasible diligence,” ’ ” Starns v. Andrews, 524 F. 3d 612, 618 (CA5 2008) (quoting Moore v. Knight, 368 F. 3d 936, 940 (CA7 2004)). Here, Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins— the central impediment to the pursuit of his legal remedy— removed from his case. And, the very day that Holland discovered that his AEDPA clock had expired due to Collins’ failings, Holland prepared his own habeas petition pro se and promptly filed it with the District Court.
Because the District Court erroneously relied on a lack of diligence, and because the Court of Appeals erroneously relied on an overly rigid per se approach, no lower court has yet considered in detail the facts of this case to determine whether they indeed constitute extraordinary circumstances *654 sufficient to warrant equitable relief. We are “[mjindful that this is a court of final review and not first view.” Adarand Constructors, Inc. v. Mineta, 534 U. S. 103, 110 (2001) (per curiam) (internal quotation marks omitted). And we also recognize the prudence, when faced with an “equitable, often fact-intensive” inquiry, of allowing the lower courts “to undertake it in the first instance.” Gonzalez v. Crosby, 545 U. S. 524, 540 (2005) (Stevens, J., dissenting). Thus, because we conclude that the District Court’s determination must be set aside, we leave it to the Court of Appeals to determine whether the facts in this record entitle Holland to equitable tolling, or whether further proceedings, including an evidentiary hearing, might indicate that respondent should prevail.
The judgment below is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.